MORITZ, Circuit Judge.
Mary Anne Sause brought this action under 42 U.S.C. § 1983, alleging that Officers Lee Stevens and Jason Lindsey (the defendants) violated her rights under the First Amendment. The district court dismissed Sause’s complaint with prejudice for failure to state a claim, see Fed. R. Civ. P. 12(b)(6), and Sause appeals.
Because Sause fails to demonstrate that the contours of the right at issue are clearly established, we agree with the district court that the defendants are entitled to qualified immunity. And we likewise agree that allowing Sause leave to amend her complaint would be futile. Accordingly, we affirm the district court’s order to the extent that it dismisses with prejudice Sause’s claims for money damages. But *1273 because we conclude that Sause lacks standing to assert her claims for injunctive relief, we reverse in part and remand with instructions to dismiss those claims without prejudice.
I
We derive the following facts from Sause’s pro se complaint, construing her allegations liberally and in the light most favorable to her. See Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991) (“A court reviewing the sufficiency of a complaint presumes all of plaintiffs factual allegations are true and construes them in the light most favorable to the plaintiff.”); id. at 1110 (“A pro se litigant’s pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.”).
On November 22, 2013, the defendants contacted Sause at her home while investigating a noise complaint. At first, Sause denied the defendants entry “[fjor [her] protection” because she couldn’t see through her peephole to determine who was at her door. App. 14. But when the defendants later returned, Sause let them in.
“[AJppearing angry,” the defendants asked Sause why she didn’t answer her door the first time. Id. at 12. Sause responded by showing them a copy of the Constitution and Bill of Rights that she keeps “on display” by her front door. Id. at 13. Lindsey “laugh[ed]” and “mockfed]” Sause, saying, “[T]hat’s nothing, it’s just a piece of paper” that “[d]oesn’t work here.” Id. Lindsey also turned on his body camera and told Sause that she was “going to be on” the television show “COPS.” Id.
At some point, Stevens left Lindsey alone with Sause and her friend Sharon Johnson, who was also present. Lindsey then informed Sause that she “was going to jail,” although he “d[idn’t] know [why] yet.” Id. Understandably frightened, Sause asked Lindsey if she could pray. Lindsey replied, “Yes,” and Sause “knelt down on ... [her] prayer rug.” Id.
While Sause was still praying, Stevens returned and asked what she was doing. Lindsey laughed and told Stevens “in a mocking tone” that Sause was praying. Id. Stevens then ordered Sause to “[g]et up” and “[t]o [s]top praying.” Id. at 13-14.
Sause’s complaint doesn’t explicitly state that she complied with Stevens’ orders, but it appears she at least stopped praying; when Lindsey told her that she “needfed] to move back” to Missouri, Sause responded, ‘Why?” Id. at 14. Lindsey then explained to Sause that Sause’s apartmeht manager told him that “no one likes” Sause. Id.
Next, the defendants started “looking through [their] booklet” for something to charge Sause with. Id. “Lindsey would point” at something in the book, and Stevens “would shake [his] head.” Id. Eventually, the defendants cited Sause for disorderly conduct and interfering with law enforcement, based at least in part on Sause’s failure to answer the door the first time the defendants “came out.” Id. The defendants then asked to see Sause’s tattoos and scars. Sause explained several times that she had previously “had a double mastectomy” and eventually “raised [her] shirt up” and showed the defendants her scars “because they kept asking.” Id. “That appeared to disgust” the defendants. Id. And it “humiliatfed]” Sause. Id.
Two years, later, Sause filed suit under § 1983, alleging that the defendants violated her First Amendment rights.[1] The de *1274 fendants moved to dismiss with prejudice, arguing that Sause’s complaint fails to state a claim upon which relief can be granted and that they’re entitled to qualified immunity. In response, Sause moved to amend her complaint. Citing a local rule, the district court denied Sause’s motion because Sause failed to attach to it a proposed amended complaint. The court explained that it wasn’t foreclosing “any future motion to amend that attaches a proposed amended complaint and complies with all applicable [rules].” Id. at 62-63.
But when Sause failed to file another motion to amend, the district court granted the defendants’ motion to dismiss with prejudice. In doing so, the court reasoned that while Stevens “may have offended” Sause by ordering her to stop praying, he didn’t “burden ... her ability to exercise her religion.” Id. at 71. Accordingly, the district court concluded that Sause’s complaint fails to allege “a plausible First Amendment claim against” Stevens; ruled that Stevens is entitled to qualified immunity; and dismissed Sause’s First Amendment claim against him.[2] Id. And because the court concluded that granting Sause leave to amend would be futile, it dismissed Sause’s complaint with prejudice. Sause appeals.
II
Sause advances three general arguments on appeal. First, she argues that the defendants aren’t entitled to qualified immunity because they violated her clearly established rights under the First Amendment. Second, she argues that even assuming the defendants are entitled to qualified immunity because the contours of that right aren’t clearly established, the doctrine of qualified immunity doesn’t shield them from her claims for injunctive relief. Third, Sause argues that even if dismissal under Rule 12(b)(6) was appropriate, the district court should have dismissed her complaint without prejudice and given her leave to amend.
A
We review de novo the district court’s decision to dismiss Sause’s claims on the basis of qualified immunity. Columbian Fin. Corp. v. Stork, 811 F.3d 390, 396 (10th Cir. 2016). To defeat the defendants’ assertion of qualified immunity at the motion-to-dismiss stage, Sause “must allege sufficient facts that show — when taken as true — the defendants] plausibly violated h[er] constitutional rights, which were clearly established at the time of violation.” Schwartz v. Booker, 702 F.3d 573, 579 (10th Cir. 2012).
We assume that Sause can satisfy the first prong of this inquiry. See Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (explaining that we have discretion to address second prong first “in light of the circumstances in the particular case at hand”). That is, we assume that the defendants violated Sause’s rights under the First Amendment when, according to Sause, they repeatedly mocked her, ordered her to stop praying so they could harass her, threatened her with arrest and public humiliation, insisted that she show them the sears from her double mastectomy, and then “appeared ... disgust[ed]” when she complied — “all over” a mere noise complaint. App. 14, 17.
But this assumption doesn’t entitle Sause to relief. Instead, Sause must demonstrate that any reasonable officer would have known this behavior violated the First Amendment. See Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, *1275 179 L.Ed.2d 1149 (2011) (explaining that right isn’t clearly established unless every reasonable officer would know that conduct at issue violates that right). Sause argues she can make this showing because it was clearly established that she had a “right to pray in the privacy of [her] home free from governmental interference,” at least in the absence of “any legitimate law enforcement interest.” Aplt. Br. 15, 47. Alternatively, she asserts, “[t]he right to be free from official retaliation for exercising one’s First Amendment rights [was] also clearly established.” Id. at 48.
We don’t disagree with Sause’s articulation of these general rights. But the Supreme Court has repeatedly and consistently warned us “not to define clearly established law at [this] high level of generality.” Mullenix v. Luna, — U.S. —, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting al-Kidd, 563 U.S. at 742, 131 S.Ct. 2074). Instead, “[t]he dispositive question is ‘whether the violative nature of [the defendants’] particular conduct is clearly established.’ ” Id. (quoting al-Kidd, 563 U.S. at 742, 131 S.Ct. 2074). In other words, “the clearly established law must be ‘particularized’ to the facts of the case.” White v. Pauly, — U.S. —, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); see id. (suggesting that law isn’t clearly established unless court can “identify a case where an officer acting under similar circumstances as [defendant] was held to have violated” relevant constitutional right). Thus, before we may declare the law to be clearly established, we generally require (1) “a Supreme Court or Tenth Circuit decision on point,” or (2) a showing that “the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.” Fancher v. Barrientos, 723 F.3d 1191, 1201 (10th Cir. 2013) (quoting Casey v. City of Fed. Heights, 509 F.3d 1278, 1284 (10th Cir. 2007)).
Here, Sause doesn’t identify a single case in which this court, or any other court for that matter, has found a First Amendment violation based on a factual scenario even remotely resembling the one we encounter here — i.e., a scenario in which (1) officers involved in a legitimate investigation obtain consent to enter a private residence and (2) while there, ultimately cite an individual for violating the law but (3) in the interim, interrupt their investigation to order the individual to stop engaging in religiously-motivated conduct so that they can (4) briefly harass her before (5) issuing a citation. In other words, “this case presents a unique set of facts and circumstances.” White, 137 S.Ct. at 552 (quoting Pauly v. White, 814 F.3d 1060, 1077 (10th Cir. 2016), cert. granted and judgment vacated, — U.S. —, 137 S.Ct. 548, 196 L.Ed.2d 463 (2017)). And “[t]his alone” provides “an important indication ... that [the defendants’] conduct did not violate a ‘clearly established’ right.” Id.
Of course, the Supreme Court has said that “ ‘general statements of the law are not inherently incapable of giving fair and clear warning’ to officers.” White, 137 S.Ct. at 552 (quoting United States v. Lanier, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)). And we recognize that Sause need not identify “a case directly on point” to show that the law is clearly established. al-Kidd, 563 U.S. at 741, 131 S.Ct. 2074 (emphasis added). “After all, some things are so obviously unlawful that they don’t require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a ease on point is itself an unusual thing.” Browder v. City of Albuquerque, 787 F.3d 1076, 1082 (10th Cir. 2015).
*1276 But while the conduct alleged in this case may be obviously unprofessional, we can’t say that it’s “obviously unlawful.” Id. It certainly wouldn’t be obvious to a reasonable officer that, in the midst of a legitimate investigation, the First Amendment would prohibit him or her from ordering the subject of that investigation to stand up and direct his or her attention to the officer — even if the subject of the investigation is involved in religiously-motivated conduct at the time, and even if what the officers say or do immediately after issuing that command does nothing to further their investigation.
In other words, this isn’t a ease where the defendants’ conduct is so “obviously egregious ... in light of prevailing constitutional principles” that “less specificity is required from prior case law to clearly establish the violation.” Fogarty v. Gallegos, 523 F.3d 1147, 1161 (10th Cir. 2008) (quoting Casey, 509 F.3d at 1284).[3] Instead, Sause can only satisfy the clearly-established prong by citing a case or cases that make clear “the violative nature of [the defendants’] particular conduct.” Mullenix, 136 S.Ct. at 308 (quoting al-Kidd, 563 U.S. at 742, 131 S.Ct. 2074). And because Sause fails to identify — and our independent research fails to yield — any such authority, we conclude that the law isn’t clearly established. Accordingly, we agree with the district court that Stevens is entitled to qualified immunity.[4]
Our conclusion that Stevens is entitled to qualified immunity also resolves Sause’s next argument: that the district court erred in construing her complaint to allege a First Amendment claim against Stevens alone, rather than alleging claims against both Stevens and Lindsey. Even if we assume that Sause’s complaint alleges a First Amendment claim against Lindsey, the district court’s failure to recognize as much was harmless. In the absence of any authority that “place[s] the ... constitutional question beyond debate,” Lindsey is, like Stevens, entitled to qualified immunity. al-Kidd, 563 U.S. at 741, 131 S.Ct. 2074.
B
Alternatively, Sause argues that even if she fails to satisfy the clearly-established prong and the defendants are therefore entitled to qualified immunity, the district court nevertheless erred in dismissing her complaint because it asserts plausible claims for injunctive relief. See Jones v. City & Cty. of Denver, 854 F.2d 1206, 1208 n.2 (10th Cir. 1988) (explaining that because doctrine of qualified immunity doesn’t protect officials from claims for injunctive relief, “defendants must proceed to trial” on such claims, “even if qualified immunity protects them from suit on the question of liability for money damages”).
For purposes of this argument, we again assume that Sause’s complaint adequately pleads a constitutional violation. And we agree with Sause that her pro se complaint demonstrates an intent to seek injunctive relief for that violation. Specifically, Sause asserts that “[n]o money” can adequately compensate her for the alleged violation of her constitutional rights. App. 16. Moreover, Sause’s complaint indicates that “the *1277 wrongs alleged ... are continuing to occur at the present time.” Id. Finally, Sause asserts that Lindsey “[t]hreatened [her] again” sometime in March 2015 and “[l]ec-tured” her that “ ‘[fjreedom of [sjpeech’ means nothing.” Id. at 17.
But while these allegations are sufficient to establish that Sause is attempting to assert claims for injunctive relief, they’re insufficient to establish that she has standing to maintain such claims.[5] That’s because a plaintiff lacks standing to “maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future.” Barney v. Pulsipher, 143 F.3d 1299, 1306 n.3 (10th Cir. 1998) (quoting Facio v. Jones, 929 F.2d 541, 544 (10th Cir. 1991)); see City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (“[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding in-junctive relief....” (quoting O’Shea v. Littleton, 414 U.S. 488, 495, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974))).
In Lyons, the plaintiff “filed a complaint for damages, injunction, and declaratory relief’ based on law enforcement’s use, during a routine traffic stop, of a choke-hold that left him unconscious and damaged his larynx. 461 U.S. at 97-98, 103 S.Ct. 1660. The Supreme Court agreed that these allegations were sufficient to demonstrate that the plaintiff “may have been illegally choked by the police” on a single occasion, and thus “presumably [had] standing to claim damages.” Id. at 105,103 S.Ct. 1660.
But the Court said that those same allegations “d[id] nothing to establish a real and immediate threat” that the plaintiff would again suffer a similar injury in the near future — i.e., “that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.” Id. And because there was no indication that the plaintiff “faced a real and immediate threat of again being illegally choked,” the Court reasoned, the plaintiff “failed to demonstrate a case or controversy ... that would justify the equitable relief sought.” Id. at 105, 110, 103 S.Ct. 1660. Accordingly, the Court concluded, “the [district [c]ourt was quite right in dismissing” the plaintiffs claim for injunc-tive relief. Id. at 98, 110, 103 S.Ct. 1660.
So too here, where Sause indicates in her complaint only that “the wrongs alleged” there “continu[e] to occur.” App. 16. This general allegation is “vague and completely lacking in specificity,” Ledbetter v. City of Topeka, 318 F.3d 1183, 1188 (10th Cir. 2003) (quoting Ledbetter v. City of Topeka, No. 00-1153-DES, 2001 WL 80060, at *2 (D. Kan. Jan. 23, 2001), aff'd, 318 F.3d 1183 (10th Cir. 2003))—especially in light of the numerous and varied “wrongs” Sause alleges in her 14-page complaint, App. 16.
The only specific allegations Sause makes to that effect are her assertions that Lindsey “[t]hreatened [her] again” sometime in March 2015 and “[l]ectured” her that “ ‘[fjreedom of [s]peech’ means nothing.” App. 15-17. These allegations are insufficient to demonstrate that Sause faces “a good chance of being likewise injured in the future.” Barney, 143 F.3d at 1306 n.3 (quoting Facio, 929 F.2d at 544). That is, Sause fails to establish she “face[s] *1278 a real and immediate threat” that (1) the defendants will again enter her home while investigating a crime; (2) she will again kneel and pray; and (3) the defendants will again order her to stand up and stop praying so they can harass her. Lyons, 461 U.S. at 105, 103 S.Ct. 1660; see Barney, 143 F.3d at 1306 & n.3 (holding that plaintiffs lacked standing to seek injunctive relief because they failed to demonstrate any likelihood that they would “end up” back in jail where alleged constitutional violations occurred).
True, Sause’s complaint indicates she continues to “fear[] [t]o [t]his [d]ay” that she will have a similar encounter with the defendants sometime in the future. App. 17. But it’s “the reality of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiffs subjective apprehensions.” Lyons, 461 U.S. at 107 n.8, 103 S.Ct. 1660. Thus, “[t]he emotional consequences” of the acts Sause alleges in her complaint “simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendantfs].” Id. Accordingly, Sause’s subjective fears, however genuine, are insufficient to establish standing.
In short, we agree with Sause that qualified immunity doesn’t shield the defendants against her claims for injunctive relief. But because Sause lacks standing to maintain those claims, the district court was “quite right” to dismiss them. Lyons, 461 U.S. at 110, 103 S.Ct. 1660. Nevertheless, Sause’s lack of standing deprived the district court of subject matter jurisdiction to reach the merits of her claims for in-junctive relief. Accordingly, we remand to the district court with directions to dismiss those claims without prejudice. See Brereton v. Bountiful City Corp., 434 F.3d 1213, 1218 (10th Cir. 2006).
C
Finally, even assuming dismissal was appropriate, Sause argues that the district court abused its discretion in concluding that it would be futile to grant Sause leave to amend and in dismissing Sause’s claims with prejudice on that basis. See Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010) (“[O]rdinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice, and a careful judge will explain the pleading’s deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint.” (internal citations omitted)).
In support of this argument, Sause asserts that her “complaint states a plausible claim,” Aplt. Br. 53, or at the very least, that her “factual allegations are close to stating” one, id. at 53-54 (quoting Gee, 627 F.3d at 1195).
We don’t necessarily disagree. Indeed, for purposes of resolving this appeal, we assume that the defendants violated Sause’s First Amendment rights. But even with the benefit-of that assumption, the defendants are nevertheless entitled to qualified immunity because Sause fails to identify a case that “place[s] the ... constitutional question beyond debate.” al-Kidd, 563 U.S. at 741, 131 S.Ct. 2074. And because Sause makes no effort to explain how she might amend her complaint to overcome this legal hurdle, she fails to demonstrate that the district court abused its discretion in dismissing her claims for monetary relief with prejudice. Cf. Gee, 627 F.3d at 1195 (affirming dismissal with prejudice where claims were “barred by preclusion or the statute of limitations” because “amending those claims would be futile”).
[[Image here]]
To the extent that Sause’s complaint seeks monetary relief, we agree that the *1279 defendants are entitled to qualified immunity and that providing Sause an opportunity to amend her complaint would be futile. Accordingly, we affirm the district court’s order to the extent that it dismisses with prejudice Sause’s claims for money damages. To the extent that Sause’s complaint instead seeks injunctive relief, we likewise conclude that the district court properly dismissed her claims. But because we conclude that Sause’s lack of standing deprived the district court of subject matter jurisdiction, we remand with directions to dismiss her claims for injunc-tive relief without prejudice.

. Sause also brought other claims and named other defendants. But on appeal, she addresses only her First Amendment claims against Lindsey and Stevens. We therefore confine our analysis to those claims.

. The district court didn't separately address whether Lindsey violated Sause's First Amendment rights, apparently because it didn’t construe her complaint as asserting such a claim against Lindsey.

. We have recently questioned Casey's "sliding-scale approach.” Aldaba v. Pickens, 844 F.3d 870, 874 n.1 (10th Cir. 2016). But we need not address its continuing validity here; even assuming it survives the Court's decision in Mullenix, — U.S. —, 136 S.Ct. 305, 193 L.Ed.2d 255, it doesn't help Sause.

. The district court didn’t reach the clearly-established prong because it found there was no constitutional violation. But we "may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court.” Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1130 (10th Cir. 2011).

. Although the district court didn’t address Sause's standing to seek injunctive relief and the defendants don’t challenge her standing to do so on appeal, we have an independent obligation to address the issue. See Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114, 1126 (10th Cir. 2013) ("[W]henever standing is unclear, [this court] must consider it sua sponte to ensure there is an Article III case or controversy before [it].”).