**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 17, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MITCHELL LINCOLN; RODNEY
GEHRETT; ROBERT KING;
CHERYL PECK; ROBERT STONE,

     Plaintiffs - Appellees,

v.

TERRY MAKETA, in his individual
capacity and in his official capacity
as Sheriff of El Paso County;
PAULA PRESLEY, in her individual
capacity and in her official capacity
as Undersheriff of El Paso County,

     Defendants - Appellants,

and

THE BOARD OF COUNTY
COMMISSIONERS OF THE
COUNTY OF EL PASO; EL PASO
COUNTY SHERIFF'S OFFICE;
BILL ELDER; JOE BREISTER,

     Defendants.

No. 16-1127

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:15-CV-00423-CMA-KMT)**
_____

Andrew D. Ringel (Matthew J. Hegarty, with him on the briefs), Hall &
Evans, L.L.C., Denver, Colorado, for Defendant-Appellant Terry Maketa.

Eric M. Ziporin, Ashley M. Kelliher, Senter Goldfarb & Rice, LLC, Denver, Colorado, for Defendant-Appellant Paula Presley.

Edward T. Farry, Jr., Farry & Stock, P.C., Colorado Springs, Colorado, for Plaintiffs-Appellees.

_____

Before **HARTZ**, **HOLMES**, and **BACHARACH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal grew out of the district court's denial of qualified immunity to the former sheriff (Mr. Terry Maketa) and undersheriff (Ms. Paula Presley) of El Paso County. The claims were brought by three categories of subordinates: (1) Lieutenant Cheryl Peck; (2) Sergeant Robert Stone; and (3) Commanders Mitchell Lincoln, Rodney Gehrett, and Robert King. In this suit, Lt. Peck, Sgt. Stone, and the three Commanders allege retaliation for protected speech.

The district court held that the subordinates' allegations were sufficient to defeat qualified immunity at the motion-to-dismiss stage. We disagree because the law was not clearly established that (1) Lt. Peck's speech fell outside of her duties as a public employee, (2) the investigations of Sgt. Stone and his children constituted adverse employment actions, and (3) the investigation of the Commanders, their placement on paid administrative leave, and their alleged humiliation constituted adverse employment actions. Therefore, Sheriff Maketa and

2

Undersheriff Presley were entitled to qualified immunity and dismissal of the complaint.

## I. The Plaintiffs' Allegations

Lt. Peck and Sgt. Stone base their retaliation claims on a scheme by Sheriff Maketa and Undersheriff Presley to influence an upcoming election for sheriff by smearing one of the candidates; the Commanders base their claims on retaliation for their prior complaints about improper workplace practices. Because the ruling involves a motion to dismiss for failure to state a valid claim, we start with the plaintiffs' allegations in the complaint. *See* Part III, below.

### A. Lt. Peck

Lt. Peck's claim arises out of her statements to the media. In 2013, Sheriff Maketa and Undersheriff Presley secretly took an Internal Affairs document, planning to use it against a political opponent. At the time, Lt. Peck was in charge of the Internal Affairs Unit of the Sheriff's Office. Lt. Peck knew that the document was missing but did not know who had taken it. The mystery of the missing document generated public interest.

To address the matter, Sheriff Maketa ordered Lt. Peck to speak to the media and deliver a false narrative, saying that the Internal Affairs document had been stolen by supporters of the political opponent. Lt. Peck spoke to the media as requested, but she did not give the story crafted by

3

Sheriff Maketa; she instead "spoke truthfully." Appellant's App'x at 277. In response, Sheriff Maketa transferred Lt. Peck to the midnight shift.

## B.    Sgt. Stone

Sgt. Stone's claim arises out of his political support for the candidate opposed by Sheriff Maketa and Undersheriff Presley. Upon learning of Sgt. Stone's support, Sheriff Maketa retaliated by

- subjecting Sgt. Stone to a "criminal investigation" into the missing Internal Affairs document, including interrogations, two lie-detector tests, and accusations that Sgt. Stone had stolen the document and

- ordering a criminal investigation into Sgt. Stone's two children, both of whom were employees of the Sheriff's Office.

## C.    The Commanders

The Commanders' claims arise out of their filing of complaints about Sheriff Maketa and Undersheriff Presley. These complaints were filed with the Equal Employment Opportunity Commission and the El Paso County Board of County Commissioners. In the complaints, the Commanders alleged that Sheriff Maketa and Undersheriff Presley had engaged in improper practices.

The Commanders informed Undersheriff Presley of the complaints. Three hours later, Sheriff Maketa and Undersheriff Presley

- put the Commanders on paid administrative leave,

- confiscated their telephones, tablets, weapons, badges, and vehicles, and

4

- had the Commanders escorted out of the building.

The Commanders allege humiliation from the second and third actions. And in the aftermath of the complaints, Sheriff Maketa and Undersheriff Presley filed Internal Affairs complaints against two of the Commanders, subjecting them to internal investigations.

## II.    Procedural History

Lt. Peck, Sgt. Stone, and the Commanders sued under 42 U.S.C. § 1983, alleging that Sheriff Maketa and Undersheriff Presley had retaliated based on the exercise of protected speech. Sheriff Maketa and Undersheriff Presley moved to dismiss based on qualified immunity. The district court denied the motion, and Sheriff Maketa and Undersheriff Presley appeal.

## III.    Standard of Review

We engage in de novo review of the district court's rulings on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and we "accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff[s]." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).[1]

---

[1]    Though Sheriff Maketa and Undersheriff Presley urged qualified immunity through a motion filed under Rule 12(b)(6), the district court cited twice to materials outside of the complaint. Generally, a district court can consider outside materials only by converting the motion to dismiss to a motion for summary judgment. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253 (10th Cir. 2005). But conversion is

5

## IV. Qualified Immunity

The doctrine of qualified immunity protects officials from civil liability as long as they do not "'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, _ U.S. _, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To defeat this immunity, we require the plaintiff to show that

- the defendant violated a constitutional or statutory right and

- the violated right was "'clearly established at the time of the alleged unlawful activity.'"

*Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016) (quoting *Swanson v. Town of Mountain View*, 577 F.3d 1196, 1199 (10th Cir. 2009)). Once a defendant raises qualified immunity, the plaintiff bears the burden to show that the defendant is not entitled to immunity. *Douglas v. Dobbs*, 419 F.3d 1097, 1100 (10th Cir. 2005).

A right is "clearly established" when every "'reasonable official would [understand] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). But the right cannot be defined at a high level of

unnecessary when the documents are referenced in the complaint and their authenticity is unchallenged. *Id.* at 1253-54. These circumstances exist here: The district court cited the Commanders' filings with the Equal Employment Opportunity Commission and the El Paso County Board, the documents are discussed in the complaint, and their authenticity is undisputed.

generality; instead, the key is whether the specific conduct has been clearly established as a constitutional violation. *Mullenix*, 136 S. Ct. at 308. Accordingly, we usually require an applicable Supreme Court or Tenth Circuit opinion or the clear weight of authority from other courts treating the conduct as unconstitutional. *Sause v. Bauer*, 859 F.3d 1270, 1275 (10th Cir. 2017). But the opinion need not be on point if the conduct is "'obviously unlawful'" in light of existing precedent. *Id*. at 1275 (quoting *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015)).

We have discretion to resolve an issue of qualified immunity on either of the two prongs, and we need not decide whether a violation occurred if we conclude that the right was not "clearly established." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016). Here, we choose to address the second prong, concluding that none of the underlying rights were clearly established at the time of the alleged retaliation.

## V.    The Retaliation Claims

The plaintiffs assert retaliation under the First Amendment. We evaluate these claims under the framework derived from *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and *Pickering v. Board of Education*, 391 U.S. 563 (1968). The *Garcetti/Pickering* test contains five elements that plaintiffs must satisfy:

7

1. The protected speech was not made pursuant to an employee's official duties.

2. The protected speech addressed a matter of public concern.

3. The government's interests as an employer did not outweigh the employee's free-speech interests.

4. The protected speech was a motivating factor in the adverse employment action.

5. The defendant would not have made the same employment decision in the absence of the protected speech.

*Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009). The complaint does not allege facts reflecting the violation of a clearly established right, for Lt. Peck arguably failed to meet the first element and Sgt. Stone and the Commanders arguably failed to meet the fourth element.

## A. Lt. Peck's Retaliation Claim

Lt. Peck invokes the First Amendment, alleging punishment by Sheriff Maketa for truthfully speaking to the media. On this allegation, the first element is murky. It required Lt. Peck to show that she was speaking outside of her official duties. *See id*. And with the gloss of qualified immunity, Lt. Peck also had to demonstrate that it was clearly established that she was speaking outside of her official duties. *See* Part IV, above. She failed to satisfy that burden.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from

8

employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Therefore, Lt. Peck must demonstrate that she was speaking as a private citizen rather than as a public employee. *See Dixon*, 553 F.3d at 1302.

No bright-line rule governs when employees are speaking as part of their official duties. Thus, we conduct a practical inquiry on a case-by-case basis, asking whether the speech "'stemmed from and [was of] the type . . . that [the employee] was paid to do." *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010) (alterations and omission in original) (quoting *Green v. Bd. of Cty. Comm'rs*, 472 F.3d 794, 801 (10th Cir. 2007)). Speech was made pursuant to an employee's official duties if it was "'commissioned'" by the employer. *Thomas v. City of Blanchard*, 548 F.3d 1317, 1323 (10th Cir. 2008) (quoting *Garcetti*, 547 U.S. at 422).

The law was not clearly established on whether Lt. Peck's duties included her discussion with the media. As head of Internal Affairs, Lt. Peck spoke to the media about an Internal Affairs matter at the explicit direction of her supervisor. The speech therefore seems to have been "'commissioned'" by her employer. *See Foley v. Town of Randolph*, 598 F.3d 1, 7 (1st Cir. 2010) (stating that a Fire Department Chief spoke in an official capacity to the media because he was on duty and in uniform, so he "would naturally be regarded as the public face of the Department when speaking about matters involving the Department"); *Nixon v. City of Houston*, 511 F.3d 494, 498 (5th Cir. 2007) (holding that an officer spoke

9

in an official capacity to the media because he was on duty, in uniform, and speaking about police matters).

Lt. Peck contends that her speech was not made in the course of her official duties because

- her job duties did not require her to speak to the media and

- she disobeyed Sheriff Maketa's instructions on what to say.

We reject both contentions.

First, Lt. Peck notes that speaking to the media was not part of her job duties. But an employee's formal job duties are not dispositive; speech can be considered "official" even when it "concerns an unusual aspect of an employee's job that is not part of his everyday functions." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1203 (10th Cir. 2007).

Second, Lt. Peck spoke to the media because of a directive, but she disobeyed the order to lie. In some circuits, Lt. Peck's disobedience might affect whether she was speaking as part of her official duties. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1075 (9th Cir. 2013) ("[W]hen a public employee speaks in direct contravention to his supervisor's orders, that speech may often fall outside of the speaker's professional duties."); *Jackler v. Byrne*, 658 F.3d 225, 241-42 (2d Cir. 2011) (holding that an employee spoke as a citizen when he disobeyed his superiors' orders to retract a truthful report and substitute a false one). But this approach is not

10

universal. *See Nixon v. City of Houston*, 511 F.3d 494, 498-99 (5th Cir. 2007) (holding that a uniformed officer's media statement constituted official speech regardless of whether it was "in contravention of the wishes of his superiors"). The Tenth Circuit has not spoken on this issue. In the absence of applicable precedent, Sheriff Maketa lacked clear guidance on whether Lt. Peck was speaking as part of her official duties. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 929 n.9 (10th Cir. 2015) ("A circuit split will not satisfy the clearly established prong of qualified immunity."). As a result, the alleged retaliation would not have violated a clearly established constitutional right. *See* Part IV, above.[2]

## B.     Sgt. Stone's Retaliation Claim

According to Sgt. Stone, Sheriff Maketa conducted pretextual criminal investigations into Sgt. Stone and his children for theft of the Internal Affairs document. But with the gloss of qualified immunity, Sgt. Stone cannot satisfy the fourth element of the *Garcetti/Pickering* test because the alleged investigations did not clearly constitute adverse employment actions. *See* pp. 6-8, above.

---

[2]     Lt. Peck also alleges that she was subject to a "criminal investigation" into the missing Internal Affairs document. The alleged investigation does not clearly qualify as an "adverse employment action" under the fourth element of the *Garcetti/Pickering* test. *See* Part V(B), below. In addition, the complaint does not tie the investigation to Lt. Peck's protected speech. Therefore, this allegation would not satisfy the fourth element (that the protected speech was a motivating factor for the retaliation).

11

The fourth element of the *Garcetti/Pickering* test requires that "the protected speech [be] a motivating factor in the adverse employment action." *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009). This element implicitly requires that the employer "'take[] some adverse employment action against the employee.'" *Couch v. Bd. of Trs. of Mem'l Hosp. of Carbon Cty.*, 587 F.3d 1223, 1235-36 (10th Cir. 2009) (quoting *Belcher v. City of McAlester*, 324 F.3d 1203, 1207 n.4 (10th Cir. 2003)). Thus, Sgt. Stone must establish an adverse employment action. *Id.* at 1236. And with the gloss of qualified immunity, Sgt. Stone bears the burden of showing that the criminal investigations would clearly have constituted adverse employment actions. *See* pp. 6-8, above. Sgt. Stone failed to satisfy this burden.

For a retaliation claim under Title VII, an adverse employment action is something that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). This standard is analogous to the standard used in First Amendment retaliation cases like this one. *See Couch*, 587 F.3d at 1238 (stating that an adverse employment action is one that would "'deter a reasonable person from exercising his or her First Amendment rights'" (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1208 (10th Cir. 2007))). Sgt.

12

Stone characterizes the criminal investigations as adverse employment actions, but the law does not clearly support this characterization.

### 1.    The Criminal Investigation into Sgt. Stone

The first alleged action is an investigation into Sgt. Stone regarding the missing Internal Affairs document. A workplace investigation generally does not constitute an adverse employment action. *Couch*, 587 F.3d at 1243. But Sgt. Stone suggests that this investigation was different because it was a *criminal* investigation. Sgt. Stone's distinction lacks definitive support in our precedents.

The Supreme Court has declined to consider whether a retaliatory criminal investigation entails a constitutional violation. *Hartman v. Moore*, 547 U.S. 250, 262 n.9 (2006). Other circuits disagree with one another on the issue. *Compare Rehberg v. Paulk*, 611 F.3d 828, 850-51 & n.24 (11th Cir. 2010) (declining to treat a retaliatory criminal investigation as a First Amendment violation), *with Coszalter v. City of Salem*, 320 F.3d 968, 976 (9th Cir. 2003) (noting that a criminal investigation could violate the First Amendment).

Our court has not settled the question. We did address a particular form of criminal investigation in *Berry v. Stevinson Chevrolet*, 74 F.3d 980 (10th Cir. 1996). There the plaintiff's former employer retaliated by maliciously encouraging the filing of criminal charges, culminating in a trial. *Berry*, 74 F.3d at 984, 986. We held that this filing of criminal

13

charges at the employer's behest constituted an adverse employment action. *Id.* at 986. But for two reasons, *Berry* does not clearly support Sgt. Stone's characterization of the investigation as an adverse employment action.

First, Sgt. Stone alleges only a "criminal investigation," and an investigation is a far cry from formally filing charges and bringing someone to trial. *Cf. Belcher v. City of McAlester*, 324 F.3d 1203, 1207 n.4 (10th Cir. 2003) ("If the action taken by the employer . . . has only speculative consequences, there can be no basis for a First Amendment claim."). And the fact that the investigation had a "criminal" aspect does not necessarily create an adverse employment action. *See Dick v. Phone Directories Co.*, 397 F.3d 1256, 1269 (10th Cir. 2005) (holding that an employer's instruction to the plaintiff's coworkers to file a police report against the plaintiff did not constitute an adverse employment action).

Second, this case does not implicate the concerns that drove our decision in *Berry*. In *Berry*, we emphasized that the employment action was adverse because "[a] criminal trial . . . is necessarily public and therefore carries a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Berry*, 74 F.3d at 986; *see Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004). But Sgt. Stone does not allege that his criminal investigation was made public or

14

that it resulted in humiliation, damage to reputation, or harm to his future employment prospects.

In short, *Berry* is distinguishable and was driven by concerns that are inapplicable here. *See Estate of Reat v. Rodriguez*, 824 F.3d 960, 967 (10th Cir. 2016) (holding that the defendant was entitled to qualified immunity because the plaintiff's cited cases were too factually distinct to apply clearly to the specific circumstances there). Thus, *Berry* does not suggest the violation of a clearly established constitutional right.

Sgt. Stone and the district court relied only on general standards, noting that an adverse employment action is one that would deter reasonable persons from exercising their First Amendment rights. But the analysis of qualified immunity is based on specific facts, not abstract principles. *White v. Pauly*, _ U.S. _, 137 S. Ct. 548, 552 (2017) (per curiam). Sgt. Stone does not direct us to any on-point cases from this court, the Supreme Court, or other courts; and he has not demonstrated that the criminal investigation would "obviously" constitute an adverse employment action. *See Sause v. Bauer*, 859 F.3d 1270, 1275 (10th Cir. 2017). Thus, Sheriff Maketa is entitled to qualified immunity on this claim.

**2.   The Criminal Investigation into Sgt. Stone's Children**

The second set of alleged actions involves a criminal investigation into Sgt. Stone's children. It is true that taking an adverse employment

15

action against an employee's child would likely constitute an adverse employment action against the employee himself. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174-75 (2011) (holding that an employer took an adverse employment action against an employee by firing the employee's fiancé). But as discussed above, the law did not clearly characterize the "criminal investigation" as an adverse employment action. *See* Part V(B)(1), above. Therefore, qualified immunity is not defeated by the alleged criminal investigation into Sgt. Stone's children.[3]

## C. The Commanders' Retaliation Claims

The Commanders allege that Sheriff Maketa and Undersheriff Presley retaliated in three ways:

1. placing the Commanders on paid administrative leave,

2. humiliating them by having them escorted out of the building and taking their work equipment, and

3. conducting investigations through Internal Affairs.

The Commanders' allegations do not clearly show the existence of an adverse employment action.

---

[3] Sgt. Stone also argues that a death threat constituted an adverse employment action. This argument is not plausibly supported by the complaint. There Sgt. Stone alleged that Undersheriff Presley had said that she was "going to kill" Sgt. Stone. Appellant's App'x at 275. But the complaint does not plausibly allege a threat or even that Undersheriff Presley had communicated the statement to Sgt. Stone.

### 1. Paid Administrative Leave

There was no clearly established authority treating the paid administrative leave as an adverse employment action.

In determining whether paid administrative leave constitutes an adverse employment action, courts must closely scrutinize the facts and draw lines that are not always self-evident. To date, our own court has not issued a precedential opinion on whether paid administrative leave constitutes an adverse employment action. In one non-precedential opinion, we upheld the district court's conclusion that placement on paid administrative leave for eighteen days, pending the outcome of an investigation, was not an adverse employment action. *See Juarez v. Utah*, 263 F. App'x 726, 737 (10th Cir. 2008) (unpublished). Other circuits have also addressed this question, reaching various conclusions. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1079 (9th Cir. 2013) (placement on paid administrative leave, along with forfeiture of on-call and holiday pay and loss of employment opportunities, was an adverse employment action); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (placement on paid administrative leave for three weeks, without other adverse consequences, was not an adverse employment action); *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 787 (7th Cir. 2007) (placement on paid administrative leave for three months was not an adverse employment action); *Michael v. Caterpillar Fin. Servs.*, 496 F.3d 584, 596 (6th Cir.

17

2007) (placement on paid administrative leave for four days, coupled with placement on a 90-day performance plan, was an adverse employment action).

These context-driven opinions do not establish any clear demarcation of when paid administrative leave is or is not an adverse employment action. Indeed, some of these opinions may even be in tension with each other. *Compare Nichols*, 510 F.3d at 787 (three months of paid administrative leave was not an adverse employment action), *with Michael*, 496 F.3d at 596 (four days of paid administrative leave and a 90-day performance plan was an adverse employment action). And further uncertainty arises from the complaint's failure to allege the duration of the Commanders' paid administrative leave.

In short, neither we nor other circuits have established any clear guidance on where to draw the line between adverse and non-adverse paid administrative leave.[4] Without any guidance, we do not regard placement on paid administrative leave as a clearly established adverse employment action. *See Lowe v. Raemisch*, 864 F.3d 1205, 1209 (10th Cir. 2017) (holding that qualified immunity was appropriate when a "case-by-case examination of the totality of circumstances" was required). Thus, Sheriff Maketa and Undersheriff Presley were entitled to dismissal of this claim.

---

[4]    At oral argument, the Commanders admitted that they were unaware of an opinion in any circuit that treated paid administrative leave as an adverse employment action.

18

## 2.    Humiliation

The Commanders add that they were escorted out of the building and stripped of their work equipment. Again, neither the Commanders nor the district court identified any precedents characterizing these actions as adverse employment actions. *Cf. McCoy v. City of Shreveport*, 492 F.3d 551, 561 (5th Cir. 2007) (declining to decide the "close question" of whether putting a police officer on paid administrative leave and taking her gun and badge constituted an adverse employment action).

Rather than focusing on these actions, the Commanders treat the humiliation itself as the adverse employment action. For this proposition, the Commanders rely on a passage from *Annett v. University of Kansas*, 371 F.3d 1233 (10th Cir. 2004). *Annett* stated that when we define an adverse employment action, "we consider acts that carry 'a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects.'" *Annett*, 371 F.3d at 1239 (quoting *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996)). But *Annett* does not supply the Commanders with clearly established law for three reasons.

First, the complaint does not allege that the Commanders suffered "damage to reputation" or "harm to future employment prospects."

Second, nothing in *Annett* requires us to consider any humiliating action as an adverse employment action. Our opinion simply noted that humiliation, along with damage to reputation and harm to future

19

employment prospects, bears on whether an action was adverse. *See id.* ("Therefore, an action that significantly harms a plaintiff's future employment prospects *may* be considered an adverse action." (emphasis added)); *see also Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004) (noting that harm to future employment prospects is "[o]ne factor" indicating that an action is adverse). Thus, an allegation of humiliation alone is not enough to clearly establish an adverse employment action.

Third, general principles are insufficient for a clearly established right. Instead, the Commanders must point to precedent establishing that the particular conduct at issue here is unlawful. *See* Part IV, above. And as noted, the Commanders do not identify any such precedents, relying only on *Annett*'s general standard. Thus, the Commanders have not demonstrated that their alleged humiliation would clearly constitute an adverse employment action.

### 3. Internal Investigations

The third set of alleged actions involved internal investigations. We generally do not consider standard workplace investigations to be adverse employment actions. *See Couch v. Bd. of Trs. of Mem'l Hosp. of Carbon Cty.*, 587 F.3d 1223, 1243 (10th Cir. 2009); *see also* Part V(B)(1), above. Accordingly, the alleged investigations did not clearly constitute adverse employment actions.

20

### 4. Actions in Combination

Even if each action did not individually constitute an adverse employment action, the combination of actions may have been adverse. The district court considered the actions in combination and concluded that the Commanders had suffered an adverse employment action. But the Commanders have not cited any similar opinions treating the combination of these actions as adverse.

The district court instead relied on general principles. For example, the court discussed *Baca v. Sklar*, 398 F.3d 1210 (10th Cir. 2005), where we treated a "campaign of retaliation" as an adverse employment action. *Baca*, 398 F.3d at 1213. The district court conceded that the Commanders had not lost their jobs like the employee in *Baca*. And the district court did not determine that this case resembles *Baca*, where the adverse employment action consisted of removing supervisory responsibilities from the employee, reprimanding him, filing a charge against him, and demanding his resignation. *Id.* at 1221. Nevertheless, the court concluded that the retaliation here was "more adverse and humiliating than the actions taken in *Baca*." *Lincoln v. Maketa*, 176 F. Supp. 3d 1179, 1194 (D. Colo. 2016) (internal quotation marks omitted). Based on this conclusion and general principles about the impermissibility of restricting protected speech, the court held that the Commanders had properly alleged an adverse employment action. But these principles are too general to create

21

clear guidance that the alleged combination of actions constituted an adverse employment action. *See* Part IV, above.

The Commanders also fail to support their characterization of the alleged actions as clearly adverse. The Commanders rely on *Annett* and *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990). But *Annett* did not sweep as broadly as the Commanders suggest and is too general to clearly establish characterization of the conduct here as an adverse employment action. The Commanders point to a footnote in *Rutan*, where the Supreme Court stated broadly that the First Amendment protects employees from "even an act of retaliation as trivial as failing to hold a birthday party for a public employee." *Rutan*, 497 U.S. at 75 n.8 (internal quotation marks omitted). But this statement constitutes dicta and is not controlling. *See Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1340 n.2 (10th Cir. 2000) (collecting cases). Therefore, *Rutan* does not clearly establish an adverse employment action.

\* \* \*

Sheriff Maketa and Undersheriff Presley lacked clear guidance on whether the alleged conduct created an adverse employment action. Thus, Sheriff Maketa and Undersheriff Presley are entitled to qualified immunity on the Commanders' claims.[5]

---

[5] Two of the Commanders (Commander King and Commander Lincoln) also allege a "criminal investigation" into the missing Internal Affairs

22

## VI.   Conclusion

The assertion of qualified immunity imposes a heavy burden on the plaintiffs, requiring them to point to existing precedent or the clear weight of authority establishing the existence of a constitutional violation. None of the plaintiffs has met that burden. Lt. Peck has not demonstrated that her statement to the media was clearly made as a private citizen rather than as a public employee. Nor has Sgt. Stone or the Commanders shown that the defendants' alleged conduct would clearly constitute adverse employment actions. Accordingly, Sheriff Maketa and Undersheriff Presley were entitled to qualified immunity on all of the claims.

Reversed.

---

document. Appellant's App'x at 274. We reject this allegation because characterization of the investigation as an "adverse employment action" would not have been clearly established. *See* Part V(B)(1), above.