FILED
United States Court of Appeals
Tenth Circuit

April 23, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

DEON R. BRAXTON; MARCUS
ZEIGLER,

     Plaintiffs - Appellants,

v.

NORTEK AIR SOLUTIONS, LLC, a
limited liability company doing business in
Oklahoma,

     Defendant - Appellee.

No. 18-6076
(D.C. No. 5:17-CV-00277-R)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MORITZ**, and **EID**, Circuit Judges.
_____

Deon R. Braxton and Marcus Zeigler ("the Plaintiffs") sued their employer,

Nortek Air Solutions, LLC ("Nortek"), for discriminating against them based on their

race and for retaliating against them after they complained about the discrimination. The

district court granted summary judgment to Nortek on both claims. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

**Background**

The district court's order contains a thorough and accurate description of the events underlying this lawsuit, which we incorporate by reference. *See* Aplts. App., Vol. 3 at 480-84. The Plaintiffs have streamlined their arguments considerably on appeal, so we provide a more limited synopsis.

Nortek is a custom heating, ventilation, and air conditioning manufacturer. Braxton and Zeigler are African American assembly workers who have worked for Nortek since 2007 and 1985, respectively. Although both men remain employed by Nortek, their personnel files reflect periodic concerns as to attendance and timeliness, excessive talking, lack of productivity, and compliance with paperwork requirements.

During the relevant time frame, Braxton and Zeigler worked in Nortek's "Doors" department, where they were the only African Americans. Shortly after they began working together, Nortek placed a structure between their work stations, which hindered their interaction. Braxton and Zeigler describe it as a "metal barrier," Aplts. Opening Br. at 5, and we adopt this terminology. They believe Nortek used the structure to monitor and isolate them (but not any other employees) and note that it was removed after Zeigler's transfer to another department. By contrast, Nortek refers to the barrier as a "combine bin" that provided Braxton and Zeigler "with quick and easy access to the parts and tools that they needed while they worked," in keeping with "the lean manufacturing principal of reducing unnecessary movement and improv[ing] efficiency." Aplee. Br. at 4-5. A photograph in the record shows metal shelves filled with bins and boxes of various sizes. *See* Aplts. App., Vol. 2 at 303.

On April 20, 2016, Braxton and Zeigler were sent home from work for two partial days. A manager told them it was because they were talking, but both men contend they were punished for moving the metal barrier to clean beneath it. Whatever the reason, Braxton and Zeigler felt humiliated because they were escorted out of the office in front of their co-workers. Upon their return to their homes, Braxton and Zeigler jointly called the human resources department to complain about racial profiling in the workplace, the metal barrier, and their treatment on that day. Nortek subsequently acknowledged it had not followed its policy handbook, under which a verbal warning would have sufficed, and it paid both men for their time off. A supervisor gave both Braxton and Zeigler verbal warnings, which were not documented in their personnel files.

After the two men returned to work, Braxton met with the plant manager, Perry Simmons. During their meeting, Simmons purportedly told Braxton, "I'm here to have a meeting with you because you're the one who did all the talking to the HR." *Id.* at 242-43 (internal quotation marks omitted). He also said it was in Braxton's "best interest to let bygones be bygones and act like nothing ever happened and sweep this under the rug." *Id.* at 243 (internal quotation marks omitted). Braxton interpreted these statements as a threat in response to the phone call to the human resources department.

Braxton and Zeigler filed separate lawsuits alleging discrimination and retaliation in violation of their rights under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2 and 2000e-3, as well as state law claims for intentional infliction of emotional distress. Zeigler, who is hearing impaired, also

3

brought a claim for violation of the Americans with Disabilities Act, which he later withdrew. The district court consolidated their cases.

Upon Nortek's motion, the district court granted summary judgment to Nortek on all claims. The court considered the merits of the discrimination and retaliation claims, but it found that Braxton and Zeigler waived their intentional infliction of emotional distress claims by failing to adequately respond to that part of Nortek's motion for summary judgment.

Braxton and Zeigler filed this timely appeal. Both men challenge the district court's ruling on their discrimination claims, and Braxton also challenges the ruling on his retaliation claim.

## Analysis

We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). But if the movant will not bear the burden of persuasion at trial, it can meet this initial burden "simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. It "need not negate the nonmovant's claim." *Id.*

4

**A. Discrimination Claims**

For their disparate treatment claims, the Plaintiffs allege that Nortek discriminated against them because they are African American, thus violating § 1981 and Title VII. *See* 42 U.S.C. § 1981 (providing all persons with equal rights under the law); 42 U.S.C. § 2000e-2(a)(1) (prohibiting an employer from discriminating against an individual because of race).

Because the claims are based on circumstantial evidence, the district court properly applied the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). The employee must first establish a prima facie case of racial discrimination. *Id.* at 802. If he does so, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* And if the employer makes this showing, the burden shifts back to the employee to show the justification offered by the employer was pretextual. *Id.* at 804-05 & n.18.

The elements of a racial discrimination claim are the same, whether the claim is brought under § 1981 or Title VII. *Baca v. Sklar*, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005). To prove a prima facie case of disparate treatment based on race, the Plaintiffs "must establish that (1) [they are] member[s] of a protected class, (2) [they] suffered an adverse employment action, (3) [they] qualified for the position[s] at issue, and (4) [they were] treated less favorably than others not in the protected class." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

The district court found that the Plaintiffs failed to make a prima facie showing of disparate treatment given the undisputed facts and applicable case law. It concluded the Plaintiffs readily satisfy the first and third elements but granted summary judgment to Nortek after determining they could not show the second element (adverse employment action) or the fourth element (less favorable treatment). We agree with the district court's conclusion.

*Adverse Employment Action*

In assessing whether an employee has suffered an adverse employment action, this court "take[s] a case-by-case approach, examining the unique factors relevant to the situation at hand." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998) (internal quotation marks omitted). We have defined the term "liberally" in that "[s]uch actions are not simply limited to monetary losses in the form of wages or benefits." *Id.*; *see also MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005) (explaining that "adverse employment actions extend beyond readily quantifiable losses" (internal quotation marks omitted)), *abrogated on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185-86 (10th Cir. 2018). "In so defining the phrase, we consider acts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004) (internal quotation marks omitted).

At the same time, "we will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action." *Sanchez*, 164 F.3d at 532 (internal quotation marks omitted). "[N]ot everything that makes an employee unhappy

6

is an actionable adverse action.  Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *MacKenzie*, 414 F.3d at 1279 (internal quotation marks omitted); *cf. Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (explaining in a different context that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits").

On appeal, the Plaintiffs pinpoint two events as adverse employment actions: (1) the metal barrier placed between their work spaces; and (2) the disciplinary incident on April 20, 2016, which caused them to suffer humiliation and resulted in a warning from the human resources department.[1]  Having thoroughly considered the case law and the record (including photographs of the structure and work area in question), we agree with the district court that the Plaintiffs could not succeed in proving an adverse

---

[1] In opposing Nortek's summary judgment motion, the Plaintiffs identified additional events as adverse employment actions:  for example, the loss of Braxton's "coordinator" title after a company merger in 2014; Braxton's lateral transfer from the "Cubes" department to the "Doors" department; the placement of the coffee machine in the work area instead of the office break room; Nortek's policy of locking its doors to force deliverymen to enter through the main entrance, which made it difficult for Braxton to reenter after his smoking breaks; and Zeigler's transfer from the "Doors" department to the "Insulation" department.  The district court explained why each of these events did not constitute an adverse employment action, and the Plaintiffs do not challenge those findings on appeal.  It is well established that "[i]ssues not raised in the opening brief are deemed abandoned or waived." *Tran v. Trs. of the State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) (internal quotation marks omitted).

employment action based on these events. The Plaintiffs highlight discrepancies between the parties' respective versions of these events to attempt to create a genuine issue of material fact. But they do not discuss the relevant standard or cite any authority in which similar actions were deemed to be adverse employment actions.

Setting aside Nortek's explanation that the metal barrier was designed to enhance the Plaintiffs' productivity, we agree that the barrier was, at most, an inconvenience; the Plaintiffs have not convinced us otherwise through evidence or case law. Likewise, the April 20 disciplinary incident and its aftermath did not rise to the level of an adverse employment action. A strong indicator that a challenged employment action is adverse "is that the action causes harm to future employment prospects." *Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004) (internal quotation marks omitted). Yet here, the Plaintiffs received payment for their time off, the warnings given to them were not placed in their permanent records, and they are still employed by the company; besides, both men had multiple other warnings in their personnel folders.

Last, to the extent the Plaintiffs argue their humiliation upon being escorted from their workplace itself constitutes an adverse employment action (which would be a generous reading of their briefs), feelings of humiliation alone are not enough to establish an adverse employment action. We rejected that notion within our qualified immunity analysis in *Lincoln v. Maketa*, 880 F.3d 533, 543 (10th Cir. 2018), when we found that "[a]n allegation of humiliation alone [was] not enough to clearly establish an adverse employment action" for a retaliation claim. Given that less is required to prove an adverse employment action for a retaliation claim than a discrimination claim, as

8

explained below, the Plaintiffs' humiliation cannot satisfy the second element here. *See also Sanchez*, 164 F.3d at 532 (evaluating the effect of an employee's "personal discomfort" and finding that where a transfer was "truly lateral and involve[d] no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively [did] not of itself render the denial or receipt of the transfer [an] adverse employment action").

*Less Favorable Treatment*

The Plaintiffs fare no better with respect to the fourth element. They contend they received less favorable treatment than their coworkers because they did not receive a raise during the summer of 2016. But Nortek presented undisputed evidence that *no* employee received a raise at that time, and the Plaintiffs did not present contrary evidence to raise a genuine issue of material fact. *See* Aplts. App., Vol. 3 at 493 ("Plaintiffs' testimony to the contrary is based solely on hearsay, not personal knowledge, and therefore [is] inadmissible to refute Defendant's showing.").

**B. Retaliation Claim**

Braxton also challenges the district court's ruling on his retaliation claim.[2] Streamlining this argument as well, he argues that the plant manager's threatening comments to him after he reported disparate treatment to the human resources department constitute retaliation in violation of Title VII. *See* 42 U.S.C. § 2000e-3(a) (prohibiting an

---

[2] Zeigler does not appeal the district court's dismissal of his retaliation claim based on his transfer from the "Doors" department to the "Insulation" department.

9

employer from discriminating against an individual because he has opposed an unlawful employment practice).

Because there is no direct evidence of retaliation, we operate once more within the *McDonnell Douglas* framework. *See Annett*, 371 F.3d at 1237. To state a prima facie case of retaliation, Braxton "must show that: (1) [he] engaged in protected activity; (2) [Nortek] took an adverse employment action against [him]; and (3) there exists a causal connection between the protected activity and the adverse action." *Id.* "For a retaliation claim under Title VII, an adverse employment action is something that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Lincoln v. Maketa*, 880 F.3d at 540 (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)).

The district court carefully applied the appropriate standard. It found that Braxton clearly met the first prima facie element because he complained to Nortek's human resources department about racial profiling, the metal barrier, and being sent home from work on April 20. But it concluded that Simmons' alleged retaliatory threat was not "*materially* adverse" because it was "wholly unrealized" and Braxton continued to work in his position: "Simmons did not follow through with whatever it was that Braxton feared—Braxton still works as a Doors assembly worker and has not shown additional evidence legitimizing this threat or bearing on a material change in employment status." Aplts. App., Vol. 3 at 494-95. The district court ended its analysis there.

Braxton does not address the district court's reasoning on appeal. He simply recites the standard and makes a conclusory statement that "a reasonable employee would

10

have found that the direct threat from Simmons to Braxton [was] materially adverse," Aplts. Opening Br. at 21.

We agree with the district court that Braxton cannot state a prima facie case of retaliation, such that summary judgment is appropriate on this claim too. Simmons' vague and isolated comment, for which there were no attendant consequences, falls far short of the applicable standard. *See Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1381 (10th Cir. 1994) (upholding the district court's determination that an employee did not establish an adverse employment action where there was no evidence an employer's threat to perform future evaluations was ever carried out).

## Conclusion

Because we conclude the Plaintiffs cannot state a prima facie case for discrimination and Braxton cannot state a prima facie case for retaliation, we need not consider the argument that Nortek's proffered nondiscriminatory reason for its actions was pretextual.

We affirm.

Entered for the Court

Nancy L. Moritz
Circuit Judge

11