**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

FREDERICK GRAY,

     Plaintiff - Appellant,

v.

PATRICIA SORRELS; DAVID
MARLAR; BUDDY HONAKER; JAMES
HOWARD; SUSAN SHIELDS;
PATRICIA STEM; WILLIAM TAYLOR;
NANCY COPPEL; AMBER ROBINSON;
ALICIA SCULL; BUSTER HARRIS,

     Defendants - Appellees.

No. 17-7063
(D.C. No. 6:16-CV-00145-RAW-SPS)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **EID**, Circuit Judges.
_____

     Pro se state prisoner Frederick Gray appeals the district court's dismissal of his

amended complaint, which alleged that under 42 U.S.C. § 1983 (1) various prison-official

defendants violated his Eighth Amendment rights when they delayed in providing him

medical care and failed to protect him from beatings by his cellmate; (2) several

_____

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

prison-official defendants improperly resolved his prison grievances, thus violating his First Amendment right of access to the courts and his Eighth Amendment right to medical care; and (3) certain prison-official defendants violated the Equal Protection Clause of the Fourteenth Amendment by providing medical care to white prisoners that was denied to him, an African American. The district court denied injunctive relief and dismissed the amended complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, and reverse and remand in part.

## I. **BACKGROUND**

We recite the facts as alleged in the amended complaint—the operative complaint. While incarcerated at the Oklahoma State Penitentiary in McAlester, Oklahoma, Mr. Gray suffered from severe pain and swelling in his knees. In June 2015, he sought treatment from the prison clinic but did not receive pain medication or any other treatment for the swelling for 79 days. The prison's resident physician, Defendant Dr. Marlar, examined his knees in early September 2015 and again on December 7, 2015. Mr. Gray filed several prison grievances complaining about lack of treatment and alleged they were not adequately addressed.

On June 13, 2014, Mr. Gray's cellmate was prescribed medication for his serious schizophrenic disorder. Prison officials warned Mr. Gray and his cellmate that if either of them did not take his medication, they would be separated immediately.[1] In early

---

[1] Mr. Gray has not identified the type of medication he was prescribed.

August 2015, the cellmate's doctor, Defendant Dr. Howard, discontinued the cellmate's medication. On August 14, 2015, following a search of their cell, the cellmate attacked Mr. Gray, injuring his neck and causing him to bleed from the mouth. In June 2016 Mr. Gray was transferred from McAlester to the Lawton Correctional Facility.

## II. ELEVENTH AMENDMENT IMMUNITY

The amended complaint named the defendants in their official and individual capacities. The district court held that the defendants who were sued in their official capacities were immune from suit for money damages under the Eleventh Amendment. "We review a district court's determination of Eleventh Amendment immunity de novo." *Arbogast v. Kan., Dep't of Labor*, 789 F.3d 1174, 1181 (10th Cir. 2015). "When a state official is sued in his or her official capacity, the Eleventh Amendment bars retrospective relief, usually in the form of money damages, because any such judgment is deemed directed at the state as the real party in interest rather than the nominal officer." *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1233 (10th Cir. 2010).[2]

Mr. Gray contends the Oklahoma Governmental Tort Claims Act (OGTCA) waives immunity for torts committed by state employees, such as these defendants. But under the OGTCA, state employees "acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from

---

[2] Injunctive relief may be available against a defendant in his or her official capacity. *See Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 631 (10th Cir. 1998) ("[A] suit against a state official in his or her official capacity seeking prospective injunctive relief is not . . . a suit against the state for Eleventh Amendment Purposes."). But as explained below, Mr. Gray is not entitled to injunctive relief.

- 3 -

liability for torts." Okla. Stat. tit. 51, § 152.1(A). "This immunity grant allows public employees to perform their duties and make decisions on behalf of the state free from fear of suit." *Anderson v. Eichner*, 890 P.2d 1329, 1336 (Okla. 1994). Accordingly, we affirm the dismissal of the claims for money damages against the defendants in their official capacities.

## III. FAILURE TO STATE A CLAIM FOR RELIEF

### A. *Standards of Review*

We review de novo the district court's order granting dismissal under Rule 12(b)(6), "accept[ing] the facts alleged in the complaint as true and view[ing] them in the light most favorable to the plaintiff[]." *Lincoln v. Maketa*, 880 F.3d 533, 537 (10th Cir. 2018) (internal quotation marks omitted). To withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to state a claim for relief. *Id.* We scrutinize the complaint from the same perspective as the district court. *Ayala v. Joy Mfg. Co.*, 877 F.2d 846, 847 (10th Cir. 1989).

"Although a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers, this court has repeatedly

insisted that pro se parties follow the same rules of procedure that govern other litigants."

*Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citation, brackets, and internal quotation marks omitted).

B.  <em>Analysis of the Three Claims</em>

1.  **Deliberate Indifference to the Prisoner's Medical Needs and Safety**

Mr. Gray alleged that the defendants violated his Eighth Amendment rights when they (1) delayed in providing him medical treatment and (2) failed to protect him from violence from his cellmate.

a.  **Legal background**

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted). Prison personnel "may thus be liable under § 1983 for indifference manifested in their response to the prisoner's needs or by intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014) (ellipses and internal quotation marks omitted). Likewise, "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (internal quotation marks omitted). These claims include both an objective and a subjective component. *Estate of Booker*, 745 F.3d at 430 (internal quotation marks omitted) (medical needs); *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (failure to protect).

For the objective component of a failure-to-treat claim, the inquiry is whether the prisoner's "medical need is sufficiently serious[, that is,] if it is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Estate of Booker*, 745 F.3d at 430 (ellipsis and internal quotation marks omitted). When a prisoner alleges that a delay in treatment caused him pain, if "the pain experienced during the delay is substantial, the prisoner sufficiently establishes the objective element of the deliberate indifference test." *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (internal quotation marks omitted).

For the objective component of a failure-to-protect claim, the prisoner "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Riddle*, 83 F.3d at 1204 (internal quotation marks omitted). "A prisoner has a right to be reasonably protected from constant threats of violence . . . from other inmates." *Id.* (internal quotation marks omitted).

For the subjective component for both types of claim, the prisoner must present "evidence of the prison official's culpable state of mind. He must show that the prison official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Estate of Booker*, 745 F.3d at 430 (citation and internal quotation marks omitted) (medical needs); *see Riddle*, 83 F.3d at 1204 (failure to protect). "[T]he official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have also drawn the inference." *Requena v. Roberts*, 893 F.3d 1195, 1215 (10th Cir. 2018) (brackets, ellipsis, and internal quotation marks omitted).

In addition to the objective and subjective components of these Eighth Amendment claims, a § 1983 "plaintiff must show the defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (citation omitted).

**b. Analysis**

*(1) Delay in medical treatment*

The amended complaint alleged that Defendants Coppel, Marlar, Robinson, and Scull denied Mr. Gray "something for any type of relief for the severe pain [he] had been in for approximately 79 days till [he] received the generic Advil." R. at 334. This allegation against a group of defendants is too conclusory to establish personal participation on the part of any one of them. *See Jenkins*, 81 F.3d at 994.

We turn to the more specific claims of failure to provide medical care against each defendant, reciting the facts as alleged in the amended complaint. In addition, we consider Mr. Gray's affidavit, which was attached to the original complaint. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint."); *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 676 n.1 (6th Cir. 2011) (basing "factual summary on plaintiffs' amended complaint and exhibits referred to therein and attached to plaintiffs' original complaint"); *Smith v. Mass. Dep't of Corr.*, 936 F.2d 1390, 1392 n.1 (1st Cir. 1991) ("We

construe the exhibits annexed to the original complaint as part of the amended complaint.").

Ms. Coppel.  Ms. Coppel was a licensed practical nurse at the prison.  The amended complaint alleged that Mr. Gray's knees were swollen and severely painful when Ms. Coppel examined him, and that she would not provide him with anything for the swelling or pain.  Mr. Gray's affidavit further alleged that Ms. Coppel saw him in late June, 2015, but Dr. Marlar did not see him until September 2, 2015.  In the interim, Ms. Coppel did not give him any pain medication and instead told him that he would have to wait for Dr. Marlar.  Mr. Gray alleged that he had been in severe pain while awaiting treatment.

We conclude that Mr. Gray stated a plausible claim of the subjective component of deliberate indifference by alleging that Ms. Coppel knew of his swollen and painful knees and determined that they required treatment, yet failed to provide any pain relief for over two months.  This sufficiently alleged that Ms. Coppel was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that she must also have drawn the inference.

We further conclude that Mr. Gray's claim that his knees were severely swollen and caused him severe pain for over two months stated a plausible claim that the delay resulted in substantial harm, thus satisfying the objective component.  *See Al-Turki*, 762 F.3d at 1193 (stating the objective element is established if the pain experienced during the delay in obtaining medical treatment is substantial).  We therefore reverse the dismissal of the claim against Ms. Coppel and remand for further proceedings.

Dr. Marlar. Dr. Marlar was the prison's resident physician. The allegations against him consist of four parts. First, the amended complaint alleged that Dr. Marlar examined Mr. Gray on September 2, 2015 ("approximately 96 days" before Dr. Marlar reevaluated him on December 7, 2015, R. at 334; *see also id.* at 168 (Mr. Gray's affidavit stating he saw Dr. Marlar on September 2, 2015)). Mr. Gray concedes that he received treatment on September 7, which was shortly after Dr. Marlar's initial evaluation, so any delay in treatment by Dr. Marlar was minimal and would not amount to deliberate indifference.

Second, the amended complaint alleged that at the December 7 evaluation, Dr. Marlar "said he would prescribe something more serious for the pain," *id.*, implying that Mr. Gray had previously been given some form of pain medication. Indeed, Mr. Gray's allegation that he was denied pain medication for 79 days after June 22, 2015, indicates that he was given pain medication in early September 2015. These facts do not state a claim that Dr. Marlar was deliberately indifferent to his need for pain medication. *Cf. Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (holding that prisoner who was given pain medication for his headaches, albeit not the medication he desired, did not state an Eighth Amendment violation).

Third, the amended complaint alleged that on December 7, Dr. Marlar advised Mr. Gray that he would prescribe a knee brace "so the [meniscus] tendon could heal properly," R. at 334, but at a reevaluation of Mr. Gray's knees on January 8, 2016, Dr. Marlar said he could not provide a knee brace due to a spending freeze. Dr. Marlar's

inability to provide a knee brace due to a prison spending freeze does not demonstrate deliberate indifference on his part.[3]

Fourth, the amended complaint asserted that Mr. Gray suffered a whiplash neck injury on August 14, 2015, when his cellmate battered him. In his affidavit, Mr. Gray alleged that despite Dr. Marlar's statement in early September 2015 that he would order an x-ray of Mr. Gray's neck, the x-ray was not taken until November 19, 2015, more than three months after the injury and almost two and one-half months after Dr. Marlar said he would order it. Mr. Gray's affidavit further alleged that Dr. Marlar said he would order something for his neck pain, as well as a muscle relaxer, but he did not receive anything for his neck pain until January 8, 2016, and the muscle relaxer was never prescribed, so his "neck is stiff and pops when moved." *Id.* at 169.

We conclude that Mr. Gray has plausibly alleged a deliberate indifference claim against Dr. Marlar based on his neck injury. For the subjective component, Mr. Gray alleged that Dr. Marlar knew he had sustained a severe neck injury and ordered an x-ray, but failed to obtain the x-ray for two and one-half months. In addition, Mr. Gray alleged he received no pain medication for his neck until January 8, 2016, and no muscle relaxer.[4] Mr. Gray also satisfied the objective component by alleging that he had severe

---

[3] Although Mr. Gray asserted that Defendant Honaker was deliberately indifferent to his serious medical need for a knee brace by imposing a spending freeze, this allegation does not state a claim for deliberate indifference. It does not satisfy the subjective component because it does not allege that Mr. Honaker imposed a spending freeze despite his knowledge that doing so presented a substantial risk of serious harm.

[4] We recognize that the pain medication Mr. Gray received for his knees might also have served to alleviate his neck pain, but we must accept the facts alleged in the complaint as true. *Lincoln*, 880 F.3d at 537.

- 10 -

neck pain from August 14, 2015 until January 8, 2016, and that his neck continued to be stiff and pop when moved. We therefore reverse the dismissal of the claim against Dr. Marlar relating to Mr. Gray's neck injury and remand for further proceedings.

Ms. Robinson. Ms. Robinson was a licensed practical nurse at the prison. Mr. Gray's deliberate-indifference claims against Ms. Robinson based on lack of medical treatment are limited to alleging that she was an assistant to Dr. Marlar and that she and Dr. Marlar "did an initial evaluation." *Id.* at 334. These facts fail to state a plausible claim for either the objective or the subjective component of deliberate indifference.

Finally, the amended complaint alleged that Defendants Ms. Sorrels and Mr. Honaker were liable as the supervisors of those who denied medical treatment to Mr. Gray. But "supervisor status by itself is insufficient to support liability." *Mitchell*, 80 F.3d at 1441.

### (2) Failure to protect

The amended complaint alleged that Dr. Howard was responsible for prescribing psychotropic medications for Mr. Gray's cellmate's schizophrenic disorder and that he ceased prescribing the medications when Mr. Gray and the cellmate were housed together. This allegation does not state Dr. Howard knew that stopping the medications would cause the cellmate to become violent. The amended complaint therefore did not allege facts indicating that Dr. Howard acted or failed to act despite his knowledge of a substantial risk of serious harm. *See Estate of Booker*, 745 F.3d at 430.

The amended complaint alleged that Defendants Robinson, Howard, Scull, Harris, Stem, and Shields knew Mr. Gray's cellmate had a propensity for violence, but they

claimed there was no open cell available where he could be relocated. Not only did the amended complaint fail to allege that any of these defendants were responsible for cell assignments, but this group allegation is too conclusory to establish their personal participation in any alleged violation. *See Jenkins*, 81 F.3d at 994.

The amended complaint also alleged that Defendants Robinson, Scull, and Shields sent emails to Dr. Howard concerning Mr. Gray's cellmate's need for antipsychotic medication. But it did not allege the specific content of emails, nor did it allege facts that met either the objective component—Mr. Gray was incarcerated under conditions posing a substantial risk of serious harm—or the subjective component—the prison officials acted or failed to act despite knowing of a substantial risk of serious harm. *See Riddle*, 83 F.3d at 1204.

The amended complaint further alleged that Defendant Sergeant Harris, a correctional officer at the prison who supervised other prison personnel, "failed to allow" Officer Holden, a corrections officer assigned to the mental health unit, to take Mr. Gray to the prison medical department. R. at 338.[5] As a result, the injuries the cellmate inflicted on Mr. Gray were not discovered until he had a neck x-ray in November 2015. These allegations were insufficient to meet the subjective component because they did not assert any facts showing that Sgt. Harris knew that Mr. Gray had been attacked by his

---

[5] Although Mr. Gray attempts to pursue claims against Officer Holden in his appellate briefs, Officer Holden was not named in the amended complaint, so he is not a party to this appeal. *See, e.g.*, *McGowan v. United States*, 825 F.3d 118, 123 n.2 (2d Cir. 2016) (stating certain defendants "were not named in the Amended Complaint and also are not parties to this appeal").

cellmate or that he had suffered any injury, let alone a serious injury. To the extent Mr. Gray alleges Sgt. Harris is liable due to his position as Officer Holden's supervisor, or that he violated Mr. Gray's Fourth Amendment rights by failing to adequately supervise the officers who searched his cell, "supervisor status by itself is insufficient to support liability," *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).[6]

The amended complaint also alleged that Sgt. Harris's failure to have Mr. Gray taken to the medical department violated a cell-altercation protocol. But violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation). The amended complaint did not allege that the failure to comply with the prison protocol violated Mr. Gray's Eighth Amendment rights.

The remaining claims relate to Defendants Stem and Taylor. The amended complaint alleged that Dr. Stem was the prison's mental health coordinator and Mr. Taylor was a prison mental health unit manager and that, on June 13, 2014, they told Mr. Gray that he and his cellmate would be separated immediately if either of them refused to take his medication. This allegation does not assert that the prison officials

---

[6] The amended complaint alleged that the search of his cell violated Mr. Gray's Fourth Amendment rights against unreasonable searches and seizures. Not only were the search team members not named as defendants, but "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).

knew that the cellmate had refused to take his medication and failed to act despite their knowledge of a substantial risk of serious harm. Thus, it failed to allege the subjective component of a failure-to-protect claim.

2. **Responses to Prison Grievances**

The amended complaint alleged that Ms. Sorrels, the prison health services administrator; Mr. Honaker, the prison chief medical officer; and Drs. Marlar and Shields improperly denied his prison grievances, "shuffled paperwork," and attempted to use the grievance policy to "pencil whip the process" to keep Mr. Gray from availing himself of the grievance process. R. at 341. It also alleged that Dr. Shields said Mr. Gray and his cellmate were separated due to a verbal dispute, when, in fact, they were separated because the cellmate physically battered Mr. Gray. The district court rejected Mr. Gray's allegations based on prison grievances because they were insufficient to establish the requisite personal participation for a § 1983 claim.

Mr. Gray asserted that (1) these defendants improperly tried to prevent him from availing himself of administrative remedies and improperly denied grievances requesting monetary compensation, and (2) the denial of the grievances resulted in unconstitutional delays in providing him medical care. He requested the court to "excuse any construed failure to exhaust Administrative Remedy," R. at 342.[7]

---

[7] The amended complaint also asserted that Mr. Gray's Eighth and Fourteenth Amendment rights were denied because his attempt to resolve his failure-to-protect claim informally "went ignored." R. at 340. This does not state a constitutional violation.

We liberally treat the first assertions as alleging that Mr. Gray was denied his First Amendment right of access to the courts based on his failure to exhaust the prison grievance process. *See Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) ("Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust."); *id.* at 1249 (explaining that "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court"). But Mr. Gray was not foreclosed from bringing any claims for failing to exhaust the prison grievance process. Thus, his request that any failure to exhaust be excused is unnecessary. He has failed to state a First Amendment claim.

As for Mr. Gray's remaining claims that the denial of the grievances resulted in unconstitutional delays in providing him medical care, a prison official's "mere response and denial of [a] grievance [pertaining to medical treatment] are insufficient to establish the requisite personal participation under § 1983." *Requena*, 893 F.3d at 1216. Thus, these claims were properly dismissed.

3. **Equal Protection**

Mr. Gray alleged that Defendants Coppel, Robinson, and Scull violated the Equal Protection Clause when they provided pain relievers to white prisoners as soon as they complained of pain, but did not provide pain medication to him. To prove a constitutional violation, Mr. Gray must allege that he was treated differently from similarly situated individuals. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In addition, "[p]roof of racially discriminatory intent or purpose is

- 15 -

required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). "It is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes; it is necessary only to prove that a discriminatory purpose was a motivating factor." *Watson v. City of Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988).

To survive a motion to dismiss, Mr. Gray had to plead "only enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, and we accept the facts as true, viewing them in the light most favorable to him, *Lincoln*, 880 F.3d at 537. Mr. Gray's allegation that Defendants Coppel, Robinson, and Scull provided pain medication to white prisoners suffering from pain while denying pain medication to him, an African American prisoner suffering from pain, is sufficient to state a claim that he was treated differently from similarly situated individuals. Further, the allegations that these Defendants treated whites but did not treat African Americans is sufficient to draw the reasonable inference of discriminatory intent. We therefore conclude that Mr. Gray stated an equal-protection violation, and we remand this claim for further proceedings.

## IV. **PRELIMINARY INJUNCTION**

Mr. Gray requested a preliminary injunction requiring Defendants Sorrels and Honaker to "squarely address" his grievances and grievance appeals. He requested that these defendants be required to resolve his grievances so that he (1) could satisfy the requirement that he exhaust his administrative remedies to ensure his First Amendment right of access to the courts and (2) receive adequate medical care. Injunctive relief is not available due to Mr. Gray's move from the prison at McAlester to the Lawton

- 16 -

Correctional Facility in June 2016. *See Jordan v. Sosa*, 654 F.3d 1012, 1028 n.17 (10th Cir. 2011) (stating "where a prisoner is no longer housed at the penal institution having the conditions of confinement that form the basis of his suit, declaratory relief—as well as injunctive relief—is ordinarily not available"). As discussed above, Mr. Gray was not foreclosed from bringing any claims for failing to exhaust the prison grievance process based on his placement at McAlester. Any future grievances must be addressed by prison personnel at his current placement. Similarly, a preliminary injunction requiring Defendants Sorrels and Honaker to address his grievances concerning his medical treatment would serve no function because Mr. Gray's medical treatment must be provided at his current placement. An injunction directed to Defendants Sorrels and Honaker would not afford Mr. Gray any relief. We affirm the district court on this issue.

## V. REMAINING ARGUMENTS

Mr. Gray contends that a magistrate judge improperly acted as counsel for the defendants when he struck two motions to dismiss as improperly filed but granted leave for defendants to reargue each motion if appropriate. This argument lacks merit. Granting leave to reargue a motion seeking a ruling adverse to the plaintiff does not demonstrate judicial bias. *See Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) ("Adverse rulings alone do not demonstrate judicial bias.").

Mr. Gray also argues in his opening brief that prison personnel, including a prison librarian, filed retaliatory misconduct charges against him to stifle his access to the court. He further contends that they tampered with his medication and engaged in collusion. But Mr. Gray did not present these claims to the district court. "[A]bsent extraordinary

circumstances, we will not consider arguments raised for the first time on appeal." *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002).

Finally, Mr. Gray argues that cumulative error requires reversal. "Cumulative-error analysis . . . aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 860 (10th Cir. 2005) (internal quotation marks omitted). Because we have not found any harmless errors, there can be no cumulative error based on the aggregate of harmless errors.

## VI. **CONCLUSION**

We reverse the dismissal of (1) the claim against Ms. Coppel alleging she denied Mr. Gray medical treatment; (2) the claim against Dr. Marlar concerning Mr. Gray's neck injury, and (3) the equal protection claim against Ms. Coppel, Ms. Robinson, and Ms. Scull. We remand those claims for further proceedings. We affirm in all other respects the order dismissing the amended complaint and denying injunctive relief.[8]

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[8] Mr. Gray has abandoned his motion for appointment of counsel, s*ee* Aplt. Reply Br. at 20, so we deny it as moot.

- 18 -