**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 4, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SCOTT FUQUA,

     Plaintiff - Appellee,

v.

SANTA FE COUNTY SHERIFF'S
OFFICE,

     Defendant,

and

CORPORAL CHRISTOPHER ZOOK;
DEPUTY JACOB MARTINEZ;
DEPUTY LEONARDO GUZMAN,

     Defendants - Appellants.

No. 24-2152

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:23-CV-00685-JB-LF)**
_____

Brandon Huss of New Mexico Association of Counties, Santa Fe, New Mexico
(David Roman, of New Mexico Association of Counties, Santa Fe, New
Mexico, with him on the briefs), for Defendants-Appellants.

Doug Perrin of Perrin Law Firm, Santa Fe, New Mexico (Thomas M. Clark and
Samuel Ruyle, of Clark, Jones & Ruyle, LLC, Santa Fe, New Mexico, with him
on the briefs), for Plaintiff-Appellee.
_____

Before **TYMKOVICH**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.

_____

Late one night, Jason Roybal led three police officers on a low-speed car chase. Eventually, Roybal stopped his car, leaned out the window, and fired a BB gun at the officers. The officers drew their guns and fired back. Seconds later, Roybal opened his car door, dropping his BB gun in the process. As Roybal ran away from the officers and in the direction of a civilian-occupied car, the officers shot and killed him.

Scott Fuqua, as personal representative of Roybal's estate, sued the officers involved under 42 U.S.C. § 1983 for using excessive force in violation of the Fourth Amendment. The complaint alleges that the officers knew Roybal was unarmed and fleeing when they shot him. But the complaint never mentions that Roybal fired a BB gun shortly before the shooting or that he fled toward an occupied car.

The officers—Corporal Christopher Zook, Deputy Jacob Martinez, and Deputy Leonardo Guzman—moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) based on qualified immunity.[1] They argued that the

---

[1] The officers moved to dismiss twice. First, they moved to dismiss the original complaint. But then the district court granted Fuqua leave to amend. *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, No. CIV 23-0685, 2025 WL 1331667, at *7, 47 (D.N.M. May 7, 2025). After Fuqua filed his first amended complaint, the officers moved to dismiss again. The court later denied both motions to dismiss at once. *Id.* at *1. The officers appeal the denial of both motions. Because the motions were similar, and the district court's reasoning applies to both motions, we refer to a single motion to dismiss throughout the opinion.

2

complaint failed to state a plausible excessive-force claim because the complaint omitted key facts. The officers also asserted that the court should consider dash- and body-camera footage of the encounter, which would confirm that they acted reasonably.

The district court disagreed on both fronts. The court concluded that it could not consider the videos at the motion-to-dismiss stage and ruled that the complaint alleges a plausible Fourth Amendment violation. As a result, the district court denied the motion to dismiss. The officers timely appealed.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. First, the district court correctly determined that it could not consider the videos on a motion to dismiss. And second, the complaint plausibly alleges that the officers violated Roybal's clearly established right to be free from excessive force.

## BACKGROUND

### I.    Factual Background

When reviewing a motion-to-dismiss decision, we accept the complaint's well-pleaded allegations as true and consider "them in the light most favorable to the nonmoving party." *Johnson v. Smith*, 104 F.4th 153, 167 (10th Cir. 2024) (citation omitted). With that in mind, we recount the facts using only the allegations in the first amended complaint.[2]

---

[2] When the district court denied the officers' motion to dismiss, it also granted Fuqua leave to amend the case caption to replace Santa Fe County Sheriff's Office with Santa Fe County. *Fuqua*, 2025 WL 1331667, at *1. As a

(*footnote continued*)

In June 2021, Roybal was driving a stolen car around Santa Fe, New Mexico. While following Roybal, officers learned that the car was stolen and that Roybal had active warrants for his arrest. This led to a car chase that ended when Corporal Zook, Deputy Martinez, and Deputy Guzman took out their guns and shot Roybal, killing him. "The fatal shots were discharged by each of the individual [officers] as Mr. Roybal was unarmed and fleeing the [officers] on foot." App. vol. I at 70–71. Fuqua alleges that the officers knew Roybal was unarmed and "posed no threat to [the officers]" when they shot him. *Id.* at 71.

## II.    Procedural History

In June 2023, Fuqua sued the officers and the Santa Fe County Sheriff's Office in New Mexico state court. He brought an excessive-force claim against the officers under 42 U.S.C. § 1983 and a municipal-liability claim against the County.[3] The officers soon removed the case to federal court under 28 U.S.C. § 1441.

---

result, Fuqua filed a second amended complaint. The second amended complaint contains no new facts or allegations. And so, we conclude that it does not moot this appeal. *See Denv. Just. & Peace Comm., Inc. v. City of Golden*, 405 F.3d 923, 925 n.1 (10th Cir. 2005) (explaining that the filing of an amended complaint did not moot an appeal where the appealed claims "remained the same" in the amended complaint). Also, for purposes of this appeal, we treat the first amended complaint as the operative pleading. *Id.*

[3] Fuqua amended the complaint to sue Santa Fe County instead of the Santa Fe County Sheriff's Office. Fuqua's municipal-liability claim is not at issue on appeal.

4

The officers then moved to dismiss the complaint, invoking qualified immunity. Fuqua opposed the motion and asked to amend his complaint. He also attached photos and videos of the shooting. With their reply, the officers submitted other dash- and body-camera footage of the encounter.

In November 2023, the district court held a hearing on the officers' motion to dismiss. *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, No. 23-0685, 2025 WL 1331667, at *6–7 (D.N.M. May 7, 2025). There, the parties disputed whether the court could consider the videos of the shooting without converting the motion to dismiss into a motion for summary judgment. *Id.* at *6–7. Ultimately, the district court avoided the issue by granting Fuqua's motion to amend and instructing the officers to file another motion to dismiss. *Id.* at *7.

After Fuqua amended his complaint, the officers did just that. In their second motion to dismiss, they contended that Fuqua failed to state a plausible excessive-force claim because the complaint was "entirely reliant on inaccurate characterizations of the events leading up to Mr. Roybal's death." App. vol. I at 74. The officers also asked the district court to take judicial notice of their dash- and body-camera footage. In their view, the videos—which showed Roybal firing "what appears to be a semiautomatic pistol" and running toward a civilian-occupied car—directly contradicted the complaint's allegations and confirmed the officers' entitlement to qualified immunity. *Id.* at 75.

In May 2024, the district court held a hearing on the officers' second motion to dismiss. The court was "reluctant" to consider the videos and stated

that it was "inclined to deny the motion because . . . [the complaint] pleads enough to state a claim for excessive force under the Fourth Amendment." *Id.* at 143. Four months later, the district court denied both motions to dismiss "[f]or the reasons stated on the record at the two hearings." *Id.* at 99. The court noted that it would issue a memorandum opinion explaining its decision later.

The officers timely appealed. *See generally Powell v. Miller*, 849 F.3d 1286, 1288 (10th Cir. 2017) ("It is well established that a district court's pretrial denial of a qualified immunity defense, to the extent it turns on an issue of law, is an appealable final decision." (citation modified)). After the parties finished appellate briefing, the district court released its memorandum opinion. *Fuqua*, 2025 WL 1331667, at *1. The court first ruled that it could not take judicial notice of the videos. *Id.* at *35–37. Then it held that the complaint plausibly alleges that the officers shot and killed an unarmed, fleeing suspect in violation of clearly established law under *Tennessee v. Garner*, 471 U.S. 1 (1985). *Fuqua*, 2025 WL 1331667, at *38–39. For those reasons, the court denied the officers' motion to dismiss. *Id.* at *39, 47.

We ordered the parties to supplement their briefing to address the district court's memorandum opinion. On appeal, the officers argue that the district court erred by (1) declining to consider the dash- and body-camera videos, (2) concluding that the complaint alleges a plausible excessive-force claim, and (3) determining that the officers plausibly violated clearly established law. As explained below, we reject each challenge.

6

## STANDARD OF REVIEW

"We review the district court's decision not to take judicial notice for abuse of discretion." *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1224 (10th Cir. 2007). An abuse of discretion occurs when the court acts in an "arbitrary, capricious, or whimsical" manner. *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018) (citation omitted). "[A] legal error constitutes an abuse of discretion per se." *United States v. McFadden*, 116 F.4th 1069, 1082 (10th Cir. 2024).

We review de novo the decision to grant a motion to dismiss for failure to state a claim. *Stark v. Reliance Standard Life Ins.*, 142 F.4th 1252, 1256 (10th Cir. 2025). We accept all well-pleaded allegations as true and view them in the light most favorable to Fuqua. *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021).

## DISCUSSION

On a motion to dismiss based on qualified immunity, the ultimate question is "whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (citation omitted). But before determining whether qualified immunity applies, we first resolve whether the district court erred by refusing to consider video evidence of the encounter. We also address whether we can consider the videos on appeal.

7

## I.    Consideration of Video Evidence

The district court determined that it could not consider the dash- and body-camera footage at the motion-to-dismiss stage. *Fuqua*, 2025 WL 1331667, at \*35–37. Though the court noted that Federal Rule of Evidence 201 allowed it to take judicial notice of certain facts, it concluded that the videos failed to satisfy Rule 201's requirements. *Id.* at \*37. And the court explained that the videos were not judicially noticeable just because they were publicly available. *Id.* As a result, the court resolved the motion to dismiss without considering the videos. *Id.* at \*35–39.

The officers advance three reasons why the district court got this ruling wrong: (1) both parties submitted the videos to the court, (2) the videos are judicially noticeable, and (3) the videos blatantly contradict the complaint's allegations. We review—and reject—each argument in turn.

### A.    Submission to the Court

Typically, when deciding motions to dismiss, the district court cannot look beyond the four corners of the complaint. *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024). If the court considers evidence outside the pleadings, "it must convert the motion to dismiss into a motion for summary judgment." *Id.*; *see also* Fed. R. Civ. P. 12(d).

Yet this rule has a few exceptions. *See Cuervo*, 112 F.4th at 1312. For example, courts may consider "documents that a plaintiff (1) attaches to [his] complaint; (2) incorporates by reference in [his] complaint; or (3) refers to in

[his] complaint and that are central to [his] complaint and indisputably authentic." *Id.*

The officers emphasize that both parties submitted videos of the shooting to the district court. True enough, Fuqua attached two of the videos in response to the officers' first motion to dismiss. And the officers submitted several videos with their subsequent reply. The officers thus suggest that, because both parties introduced the videos, the court should have considered the video footage when deciding the motion to dismiss.

But neither the original nor the first amended complaint (1) attached the videos, (2) incorporated the videos by reference, or (3) referred to the videos. And Fuqua clarified during the May 2024 hearing that he did not want the court to consider the videos until summary judgment. *See Fuqua*, 2025 WL 1331667, at *8. We therefore conclude that the videos' mere presence in the record did not give the court leeway to consider them when deciding the officers' motion to dismiss.

## B.     Judicial Notice

The general rule prohibiting courts from considering evidence outside the complaint on a motion to dismiss has another exception: "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Judicial notice allows the court "to accept a matter as proved without requiring the party to offer evidence of it." *United States v. Estep*, 760 F.2d 1060, 1063 (10th Cir. 1985) (citation modified). And taking

judicial notice "preclude[s] a party from introducing contrary evidence and, in effect, direct[s] a verdict against him as to the fact noticed." *United States v. Boyd*, 289 F.3d 1254, 1258 (10th Cir. 2002) (citation omitted).

Federal Rule of Evidence 201 governs judicial notice. Rule 201(b) allows courts to judicially notice two types of facts: those that (1) are "generally known within the trial court's territorial jurisdiction," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." These kinds of facts are judicially noticeable because they are "not subject to reasonable dispute." Fed. R. Evid. 201(b).

For example, courts can take judicial notice of court records in related proceedings, *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010), or "provisions in municipal ordinances," *Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1504 (10th Cir. 1997). Often, courts can take judicial notice of "public records" as well. *Hooper v. City of Tulsa*, 71 F.4th 1270, 1279 n.8 (10th Cir. 2023). To qualify for judicial notice, though, the records must meet Rule 201(b)'s requirements. *See Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (rejecting the "expansive view that any document held in a public repository falls within the category of extrinsic materials that may be considered" on a motion to dismiss). Courts "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

10

The officers assert that the dash- and body-camera videos are public records under New Mexico law. *See generally* N.M. Stat. Ann. § 14-3-2(G). So they argue that the district court erred by refusing to take judicial notice of the videos. And they argue that we should take judicial notice of the videos on appeal for the same reason.

Even accepting that the videos are public records, we do not see how the videos fall into either of Rule 201's categories. Consider the First Circuit's analysis in *Freeman*, 714 F.3d at 36–37. There, the defendants claimed that the district court should have considered a 911-call transcript and two incident reports on a motion to dismiss because the documents were "public records." *Id.* at 36. The First Circuit contrasted those materials with official records "such as birth or death certificates and other similar records of vital statistics." *Id.* The court determined that it could consider only public records "subject to judicial notice under" Rule 201 and that the transcript and reports fell outside Rule 201's scope. *Id.* at 36–37.

So too here. The dash- and body-camera videos differ from public records containing indisputable facts, like birth or death certificates. *See id.* at 36. Instead, the videos' contents are "subject to reasonable dispute." Fed. R. Evid. 201(b). Indeed, if the district court had considered the videos, it would have had to weigh evidence and make factual findings—such as whether the officers saw Roybal drop his BB gun, or whether Roybal ran toward the occupied car—when ruling on the motion to dismiss. Yet "[t]he court's

11

function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citation omitted). In doing so, courts must assume the truth of the plaintiff's factual allegations. *Johnson*, 104 F.4th at 167. The district court would have flouted this standard if it had compared the videos to the complaint's allegations when deciding the officers' motion.

Take our decision in *Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006). There, we declined to consider state public records on a motion to dismiss, emphasizing that such motions "are not designed to weigh evidence or consider the truth or falsity of an adequately pled complaint." *Id.* at 1265–66. Similarly here, the officers sought to use the videos to undermine and attack the veracity of the complaint. That's simply inappropriate on a motion to dismiss. *Id.*; *Dubbs*, 336 F.3d at 1201.

In sum, we hold that the district court did not abuse its discretion by refusing to judicially notice the videos. As for the officers' request that we take judicial notice of the videos on appeal, we decline to do so. The videos are not judicially noticeable. And it would be improper for us to use extrinsic evidence to question "the truth or falsity" of the allegations at this stage in the litigation. *See Tal*, 453 F.3d at 1266.

## C.    Blatant Contradiction

Next, the officers ask us to adopt a Sixth Circuit rule allowing video evidence at the motion-to-dismiss stage when the video blatantly contradicts the complaint. *See Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024); *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386–87 (6th Cir. 2017). The officers argue that, because the videos show Roybal firing a BB gun and running toward a civilian-occupied car, the videos directly contradict the complaint's allegations that Roybal was not armed or dangerous. As a result, the officers ask that we consider the videos and credit their depiction of the encounter over Fuqua's allegations.

Once again, we reject the officers' invitation to consider the videos. For starters, our caselaw instructs us not to consider contradictory evidence on a motion to dismiss. Returning to the facts in *Tal*, the plaintiffs there alleged that the defendants fraudulently procured a redevelopment contract. 453 F.3d at 1262. The complaint claimed that the defendants misrepresented that "they were backed by Torchmark Corporation," when Stonegate—not Torchmark— "was the true" backer. *Id.* at 1262, 1264 (citation modified). The complaint further alleged that "there was no affiliation between Stonegate and Torchmark." *Id.* at 1265. Yet at the same time, state public records supported the defendants' assertion that "Stonegate was a wholly owned subsidiary of Torchmark," undermining the plaintiffs' misrepresentation claims. *Id.* at 1264.

13

We declined to consider the public records, finding it inappropriate to weigh evidence on a motion to dismiss. *Id.* at 1265–66. We explained that disregarding extrinsic evidence at the motion-to-dismiss stage was especially important "in the face of a direct claim to the contrary in the complaint." *Id.* at 1266. *Tal* thus instructs us not to consider outside evidence on a motion to dismiss, even if the evidence directly contradicts the complaint's allegations. And our other cases support that—unless an exception applies—courts cannot consider contradictory evidence at the motion-to-dismiss stage. *See, e.g., Peterson v. Martinez*, 707 F.3d 1197, 1206 (10th Cir. 2013) ("Factual allegations that contradict a *properly considered* document are not well-pleaded facts that the court must accept as true." (citation modified) (emphasis added)).

The Sixth Circuit cases that the officers rely on do not persuade us to change tack. In *Saalim*, the court explained the Sixth Circuit's standard for considering videos on a motion to dismiss: Courts can consider videos that "are clear and blatantly contradict or utterly discredit the plaintiff's version of events." 97 F.4th at 1002 (citation modified). But because the video in *Saalim* was "consistent with the complaint," the court found no "blatant[] contradict[ion]" and declined to consider the videos. *Id.* (citation modified). By contrast, the court in *Bailey* did consider video evidence on a motion to dismiss. 860 F.3d at 386–87. But importantly, the complaint in that case referenced the video. *Id.* at 386 (noting that the plaintiff "mentioned [the video] throughout his complaint"); *see also Cuervo*, 112 F.4th at 1312 (courts may

consider documents on a motion to dismiss that a plaintiff "refers to in [his] complaint and that are central to [his] complaint and indisputably authentic"). Unlike in *Bailey*, neither Fuqua's original nor his amended complaint mentions the videos at issue.

What's more, even if we apply the Sixth Circuit's rule, the videos do not "blatantly contradict or utterly discredit" the complaint. *Saalim*, 97 F.4th at 1002 (citation modified). The Sixth Circuit recently considered whether videos blatantly contradicted the complaint "on a motion to dismiss in the qualified-immunity context." *Chrestman ex rel. Wooden v. Metro. Gov't of Nashville & Davidson Cnty.*, --- F.4th ----, 2025 WL 2650582, at *4 (6th Cir. Sept. 16, 2025). In *Chrestman*, the plaintiff sued officers for using excessive force after they tased and shot her while she was in "the throes of a mental-health crisis." *Id.* at *1. The plaintiff alleged that the officers "had no reason to pull a weapon on her." *Id.* at *4 (citation omitted). But the complaint omitted (and the videos showed) that the plaintiff raised two weapons just before the officers tased her. *Id.* The court held that this omission did not contradict or discredit the complaint because the videos also showed that the plaintiff backed away from the officers and started lowering her weapons. *Id.*

Similarly here, the complaint omits (and the videos show) that Roybal fired a BB gun and fled toward an occupied vehicle. All the same, the videos also show that Roybal had dropped the gun and was running away from the officers when they shot him. Nor is it "clear" from the videos that Roybal was

heading for the civilian-occupied car rather than in its general direction. *See id.* (citation omitted); *see also Bell v. City of Southfield*, 37 F.4th 362, 366 (6th Cir. 2022) (declining to consider portion of video that did "not clearly show what happened"). So the videos do not "blatantly contradict or utterly discredit," *Chrestman*, 2025 WL 2650582, at *4, allegations that officers shot Roybal when he "was unarmed and posed no threat to them," App. vol. I at 71.

In a final effort to convince us to consider the videos, the officers remind us of our obligation to decide qualified immunity "at the earliest possible phase of the case." Reply Br. at 15–16 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). But that obligation does not allow us to evade Rule 12(b)(6)'s strictures. *See Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("This court uses the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally."). At bottom, because the officers moved to dismiss rather than for summary judgment, we cannot consider the videos. *Cf. Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (holding that courts should "view[] the facts in the light depicted by [video evidence]" on a motion for summary judgment when the videos "blatantly contradict[]" or "utterly discredit[]" the non-movant's version of events). The officers must wait until summary judgment (or trial) to attack the complaint's factual allegations.

## II. Qualified Immunity

Putting the videos behind us, we turn to the officers' request for qualified immunity. Qualified immunity shields officers from liability, unless the

16

officers "violated a constitutional or statutory right" that "was clearly established at the time of the alleged unlawful activity." *Lincoln v. Maketa*, 880 F.3d 533, 537 (10th Cir. 2018) (citation modified). "Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). That said, defendants asserting qualified immunity on a Rule 12(b)(6) motion face "a more challenging standard of review than would apply on summary judgment." *Id.* (citation omitted).

To survive a qualified-immunity defense at this stage in the litigation, "the plaintiff must [have] allege[d] facts sufficient to show (assuming they are true) that" (1) the "defendant plausibly violated their constitutional rights, and that" (2) "those rights were clearly established at the time." *Brown v. City of Tulsa*, 124 F.4th 1251, 1265 (10th Cir. 2025) (citation modified). To state a plausible claim, the complaint must include enough factual content for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because the officers moved to dismiss based on qualified immunity, we must determine whether Fuqua plausibly alleges that the officers violated

Roybal's clearly established right to be free from excessive force.[4] We consider Fuqua's allegations under each qualified-immunity prong.

### A.    Constitutional Violation

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. To sustain an excessive-force claim, a plaintiff must allege that (1) a seizure occurred, and (2) the seizure was unreasonable. *Thomas v. Durastanti*, 607 F.3d 655, 663 (10th Cir. 2010). As explained below, we think the complaint satisfies both requirements.

### 1.    Seizure

A seizure occurs when officers use "physical force or a show of authority that in some way restrains the liberty of the person." *Torres v. Madrid*, 592 U.S. 306, 311 (2021) (citation modified). The complaint alleges that "[t]he chase culminated when [the officers each] unholstered their guns and deliberately discharged their guns separately, killing Jason Roybal." App. vol. I at 70. By shooting Roybal, the officers "applied physical force to [his] body

---

[4] Fuqua argues that the officers' qualified immunity is beside the point. Rather, he asserts that the only issue on appeal is whether the complaint states a plausible claim for relief. Fuqua is mistaken. Because the officers moved to dismiss based on qualified immunity, we must determine whether Fuqua plausibly alleges a violation of a clearly established constitutional right. *Thomas*, 765 F.3d at 1194 (noting that qualified immunity applies on motions to dismiss); *Montoya*, 662 F.3d at 1162–64 (explaining that *Iqbal*, 556 U.S. 662, and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), apply to motions to dismiss based on qualified immunity).

and objectively manifested an intent to restrain" him. *Torres*, 592 U.S. at 318. Thus, we have no trouble concluding that the complaint alleges a seizure.

### 2. Reasonableness

Next, we consider whether the complaint plausibly alleges that the seizure was unreasonable. To determine reasonableness, we consider the totality of the circumstances. *Est. of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008). We "look[] at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted).

In *Graham v. Connor*, 490 U.S. 386, 396 (1989), the Supreme Court identified three non-exhaustive factors for evaluating the reasonableness of an officer's use of force. Those factors include: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. The second *Graham* factor is the most important. *Cruz v. City of Deming*, 138 F.4th 1257, 1267 (10th Cir. 2025).

We consider each *Graham* factor in turn.

### a. Severity of the Crime

This *Graham* factor "weighs against the plaintiff when the crime at issue is a felony, irrespective of whether that felony is violent or nonviolent." *Vette*, 989 F.3d at 1170. Fuqua alleges that Roybal "had active warrants and was in

19

possession of a stolen motor vehicle." App. vol. I at 70. Fuqua also alleges that Roybal led officers on an "automobile pursuit" and a "chase." *Id.* Taking or receiving a stolen vehicle is a felony in New Mexico, as is aggravated fleeing. N.M. Stat. Ann. §§ 30-16D-1, 30-16D-4, 30-22-1.1. As a result, this factor favors the officers.

### b. Reasonable Perception of an Immediate Threat

Deadly force is justified only "if the officer had probable cause to believe that there was a threat of serious physical harm to himself or others." *Est. of George v. City of Rifle*, 85 F.4th 1300, 1316–17 (10th Cir. 2023) (citation modified). We "consider a number of non-exclusive factors" when examining "the degree of threat facing officers." *Est. of Larsen*, 511 F.3d at 1260. These factors—dubbed the "*Larsen* factors," *see Est. of George*, 85 F.4th at 1317—include "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." *Est. of Larsen*, 511 F.3d at 1260.

Accepting the allegations as true and reading them in Fuqua's favor, the complaint plausibly alleges that the officers' use of deadly force was unjustified. The complaint asserts that—though fleeing from officers—Roybal was "unarmed" and "defenseless" when the officers shot him. App. vol. I at 71–72. Fuqua also alleges that the officers knew Roybal "was unarmed and posed

20

no threat to them." *Id.* at 71. All in all, because Roybal was allegedly "unarmed," "defenseless," and unthreatening, *id.* at 71–72, the first two *Larsen* factors favor Fuqua.

Next, the third *Larsen* factor does not apply, because the complaint never addresses the distance between Roybal and the officers. And as for the fourth factor, Roybal's "manifest intentions," *Est. of Larsen*, 511 F.3d at 1260, the complaint emphasizes Roybal's intent to "flee[]" and that he "posed no threat," App. vol. I at 71. Though bare, these factual allegations support that Roybal was not an "immediate threat" when the officers shot him. *Est. of Larsen*, 511 F.3d at 1260. So the fourth *Larsen* factor also favors Fuqua.

The officers argue otherwise. They contend that the facts here are like those in *Estate of George*. There, we found that a reasonable officer could conclude that an "armed and fleeing" suspect who "was physically close to members of the general public" posed a serious threat to officers and others. 85 F.4th at 1318, 1320. The officers assert that we must reach the same conclusion here, because "Roybal pointed a weapon and fired it at the officers" and "was running toward an occupied vehicle" when officers shot him. Op. Br. at 16–17.

But as discussed, when reviewing a motion-to-dismiss decision, our role is to consider the sufficiency of the complaint's allegations. And the complaint never mentions a weapon or civilians. Though evidence may later show that the officers believed Roybal was an immediate threat, at this stage we focus on

21

only the complaint's version of events. And in doing so, we conclude that the second *Graham* factor favors Fuqua.

### c.    Resistance

The last *Graham* factor focuses on "whether the plaintiff was fleeing or actively resisting at the precise moment the officer employed the challenged use[] of force." *Vette*, 989 F.3d at 1171 (citation modified). The complaint states that the officers shot Roybal when he was "fleeing the [officers] on foot." App. vol. I at 70–71. Because Fuqua "was fleeing and thereby attempting to evade arrest at the time force was used against him," this factor favors the officers. *Est. of George*, 85 F.4th at 1316.

\*    \*    \*

To recap, *Graham* factors one and three favor the officers; factor two—the most important—favors Fuqua. It is therefore plausible that Fuqua could prove the shooting was unreasonable. *See, e.g., Reavis Est. of Coale v. Frost*, 967 F.3d 978, 991–92 (10th Cir. 2020) (affirming denial of summary judgment based on qualified immunity where second *Graham* factor favored the plaintiff). We thus conclude that Fuqua alleges a plausible Fourth Amendment violation.

The officers, though, argue that—because the complaint omits that Roybal was driving recklessly, fired a BB gun, and ran toward an occupied vehicle—the complaint is implausible under *Iqbal*, 556 U.S. at 678, and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). And so they ask us to "hold

that *Iqbal* and [Federal Rule of Civil Procedure] 8 require a plaintiff to plead the most pertinent facts required for a force analysis."

We decline to impose a heightened pleading standard for excessive-force claims. True, "[t]he *Twombly* standard may have greater bite" in § 1983 cases. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). The complaint must "make clear the grounds on which the plaintiff is entitled to relief" so that the court can conduct a qualified-immunity analysis. *Id.* (citation modified).

In this case, Roybal's driving recklessly, shooting a BB gun, and running toward a civilian-occupied vehicle gives the shooting additional context. But "at this stage, we do not require a complete story; we require a *plausible* one." *Hodges v. City of Grand Rapids*, 139 F.4th 495, 506 (6th Cir. 2025). And leaving those facts out of the complaint does not make Fuqua's excessive-force claim implausible. Indeed, to be plausible, the complaint must meet only "the minimal standard of notice pleading as articulated by the Court in *Twombly*" and *Iqbal*. *Robbins*, 519 F.3d at 1249. Fuqua meets that minimal standard here by alleging enough facts for "the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged," *Bledsoe v. Carreno*, 53 F.4th 589, 606 (10th Cir. 2022) (citation omitted), and by offering "more than

23

an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678.[5]

### B. Clearly Established Right

To overcome qualified immunity, Fuqua must also show that the officers violated a clearly established right. *Lincoln*, 880 F.3d at 537. For this prong of the qualified-immunity test, we ask whether "the specific conduct" alleged in the complaint "has been clearly established as a constitutional violation." *Id.* If "every reasonable official would understand that what he is doing violates [the] right," then that right is clearly established. *Id.* (citation modified).

Fuqua claims that the district court correctly held that *Garner*, 471 U.S. at 11–12, and *Carr v. Castle*, 337 F.3d 1221, 1227–28 (10th Cir. 2003), clearly establish the unlawfulness of the officers' use of force. The officers retort that

---

[5] After denying the motion to dismiss, the district court reviewed the video evidence and "preview[ed] its thinking at the summary judgment stage." *Fuqua*, 2025 WL 1331667, at *1. The officers challenge the district court's interpretation of the videos, arguing that the court engaged in "second-by-second hindsight analysis." Supp. Op. Br. at 3. They also accuse the court of acting with "hostility toward the doctrine of qualified immunity." *Id.* at 1. Yet the district court emphasized that its factual findings "d[id] not factor into the Court's motion-to-dismiss analysis." *Fuqua*, 2025 WL 1331667, at *1 (citation modified). Because the district court's view of the videos did not influence its motion-to-dismiss decision, we need not address its discussion of the videos here.

neither case provided notice that their conduct violated Roybal's clearly established rights.[6]

We agree with Fuqua. Like the district court, we believe that *Garner* clearly establishes that the officers' alleged conduct violated Roybal's Fourth Amendment rights.[7] In *Garner*, an officer shot and killed a fleeing suspect, even though the officer "was reasonably sure and figured that [the suspect] was unarmed." 471 U.S. at 3 (citation modified). The Supreme Court held that officers must have "probable cause to believe that [a] suspect poses a threat of serious physical harm, either to the officer or to others, . . . to prevent escape by using deadly force." *Id.* at 11. Because the suspect in *Garner* was "young, slight, and unarmed," and the officer gave no reason for his actions beyond "the need to prevent an escape," the Court determined that the officer lacked probable cause to believe that the suspect posed any threat. *Id.* at 21.

To be sure, *Garner* "do[es] not by [itself] create clearly established law outside an obvious case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (citation modified). And "clearly established law should not be defined at a

---

[6] The officers also assert that the district court improperly relied on *Taylor v. Riojas*, 592 U.S. 7 (2020) (per curiam), to find the clearly established prong satisfied. We disagree. Though the court discussed *Taylor* in depth, *Fuqua*, 2025 WL 1331667, at *22–27, it did not rely on *Taylor* to hold that Fuqua alleged a violation of clearly established law, *id.* at *38–39.

[7] Because we conclude that *Garner* clearly establishes a constitutional violation on the facts alleged, we need not address whether *Carr*, 337 F.3d at 1227–28, also acts as clearly established law here.

high level of generality" but should be "particularized to the facts of the case." *Id.* (citation modified).

That said, the facts here mirror those in *Garner*. Fuqua alleges that the officers shot and killed Roybal even though he "was unarmed and fleeing," "posed no threat to [the officers]," and was "defenseless." App. vol. I at 70–72. On these allegations, the officers acted "under similar circumstances," *White*, 580 U.S. at 79, as the officer in *Garner* who violated the Fourth Amendment, 471 U.S. at 21. Because of the factual similarities between the complaint and *Garner*, we conclude that *Garner* clearly established "the specific conduct" alleged in the complaint "as a constitutional violation." *Lincoln*, 880 F.3d at 537; *see also Reavis Est. of Coale*, 967 F.3d at 993 ("*Garner* clearly established that when a suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." (citation modified)).

The officers' arguments to the contrary fail to change our minds. First, they argue that the facts here are unlike those in *Garner* because Roybal fired a BB gun before the officers shot him. Second, the officers claim that *Estate of George*, 85 F.4th at 1318, and other cases granting qualified immunity in "high-risk, armed" encounters or "threatening" encounters,[8] preclude us from holding

---

[8] Notably, all the cases cited by the officers were resolved at the summary-judgment stage. *See Cruz*, 138 F.4th at 1263; *Brosseau v. Haugen*, 543 U.S. 194, 195 (2004) (per curiam); *Plumhoff v. Rickard*, 572 U.S. 765, 768
(*footnote continued*)

that the officers' alleged conduct violated a clearly established right. Supp. Op. Br. at 14. And third, the officers argue that—to show that they violated clearly established law—Fuqua must identify a case in which officers "returned fire on a suspect who fired on them first and without warning, even if the gun used later turned out to be a bb gun." Op. Br. at 21.

These arguments all fail for the same reason: they depend on facts outside of those alleged in the complaint. Here, though, we cannot rely on extrinsic evidence to determine whether the complaint alleges a violation of a clearly established right. *See Tal*, 453 F.3d at 1265–66; *Brown*, 662 F.3d at 1164. And looking at only the complaint—as we must—Fuqua alleges that Roybal was unarmed, fleeing, and no threat to the officers. The complaint therefore plausibly alleges that the officers violated Roybal's clearly established right to be free from excessive force when they shot and killed him.[9] *See Garner*, 471 U.S. at 11.

---

(2014); *Est. of George*, 85 F.4th at 1303; *Arnold v. City of Olathe*, 35 F.4th 778, 788 (10th Cir. 2022); *District of Columbia v. Wesby*, 583 U.S. 48, 54 (2018).

[9] Of course, our decision "is based on the assumed correctness of [Fuqua's] version" of events. *Carr*, 337 F.3d at 1228. Outside evidence may sway the qualified-immunity analysis in a different direction at a later stage. We decide only that the complaint plausibly alleges a clearly established Fourth Amendment violation such that it survives a motion to dismiss.

**CONCLUSION**

For these reasons, we affirm the district court's denial of the motion to dismiss.

24-2152, *Fuqua v. Santa Fe County Sheriff's Office*

**TYMKOVICH**, Circuit Judge, dissenting.

To initiate a case, a plaintiff must provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)).

But Plaintiff trashes this already generous threshold.[1]  His deficient complaint exemplifies lackluster and deceptive pleading, and unfairly places Defendants in a position to defend themselves without adequate notice of the underlying allegations, robbing them of their rightful entitlement to qualified immunity.  I would grant Defendants' motion to dismiss.

Plaintiff's amended complaint alleges that Defendants "were involved in an automobile pursuit in Santa Fe County in which they were pursuing Jason Roybal" because "they learned that [he] had active warrants and was in possession of a stolen motor vehicle."  App. vol. I at 103.  "The chase culminated when . . . each of [the individual Defendants] unholstered their guns and deliberately discharged their guns separately, killing Jason Roybal."  *Id.*  "Roybal was unarmed and fleeing the Defendant Deputies on foot" when each individual Defendant discharged fatal shots. *Id.*

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era.").

The video evidence—three lapel videos and three dashcam videos[2]—provides a much fuller, and drastically different, narrative. Although Defendants attempted to initiate a traffic stop, Roybal ignored their commands and instigated a nighttime speed chase in which he swerved recklessly across lanes, ignored traffic lights, and even drove in reverse on both sides of road for over five minutes. Despite orders to stop his vehicle, Roybal did not comply. Roybal eventually stopped his car in the middle of the road in a darkened neighborhood. An oncoming civilian car, obviously aware of police activity from the three officer vehicles with flashing lights, pulled into a parking lot several hundred feet away with its lights on. Defendants ordered Roybal to get out of his vehicle, but again, Roybal did not comply. Instead, Roybal abruptly waved and discharged a firearm (later confirmed to be a BB gun) towards Defendants through the driver's window. In response, Defendants fired shots. Roybal then exited his vehicle and ran towards the sidewalk, in the direction of the occupied car. Defendants fired more shots and Roybal collapsed.

We must first assess whether we consider the videos—not attached to the complaint but nevertheless part of the record—in deciding the Rule 12(b)(6) motion. We should for two reasons:

*First*, the videos are central to Plaintiff's claims. True, we are at the motion to dismiss stage and thus we normally evaluate the sufficiency of a complaint based on its contents alone. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). But the

---

[2] Plaintiff introduced two of the videos into the record, while Defendants introduced the other four.

videos—introduced into the record by both parties without challenges to their authenticity—clearly depicts the events that are *central* to Plaintiff's claims. *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1301 (11th Cir. 2024) (holding that the police "body camera and dashcam footage clearly depict the events that are central to [plaintiff's excessive force and battery] claims"). To be sure, our circuit has not yet squarely held that videos central to Plaintiff's claims may be considered at the Rule 12(b)(6) stage, especially if they were not referenced in the complaint. *See, e.g., Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 n.22 (10th Cir. 2017); *Myers v. Brewer*, 773 F. App'x 1032, 1035 n.2 (10th Cir. 2019). But the videos undoubtedly depict what is allegedly described in the amended complaint. *See Johnson*, 107 F.4th at 1301. And Plaintiff's counsel conceded at oral argument that he relied on the videos in drafting the amended complaint.[3] That should be enough to trigger the incorporation-by-reference doctrine in this case. *See id.* (finding "the district court properly considered the body camera and dashcam videos" because they: (1) "clearly depict the events . . . central to [plaintiff's] claims," and (2) were not challenged as unauthentic). "[O]therwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive

---

[3] The concession essentially establishes that Plaintiff only pleaded advantageous facts while deliberately excluding potentially adverse material facts. Plaintiff argues that he need not plead defensive materials or affirmative defenses on behalf of Defendants. Again, true. But that does not grant Plaintiff the right to distort the narrative based on a dishonest representation of the facts. Here, Plaintiff's complaint borders the line of falsity.

3

document upon which the plaintiff relied." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997).

*Second*, the videos make apparent that Plaintiff's pleadings are implausible. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[,]" regardless of the stage of litigation. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Other circuits have considered videos at the motion to dismiss stage in qualified immunity cases to the extent there is a factual dispute between the parties, and the videos utterly discredit and blatantly contradict the plaintiff's version of events. *See, e.g.*, *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) ("This all makes sense—if the indisputable video evidence contradicts [Plaintiff's] pleadings, his allegations are implausible."); *Johnson*, 107 F.4th 1292. In a parallel case, for example, the Sixth Circuit similarly concluded that "when uncontroverted video evidence easily resolves a case, we honor qualified immunity's principles by considering the videos," especially if the videos are "already in the record." *Bell*, 37 F.4th at 364 ("[I]t makes little sense to waste time and effort by ignoring the videos' contents." (citation omitted)).

That is the case here. For one, the amended complaint pleads that "Roybal was unarmed and posed no threat to [Defendants]," App. vol. I at 104, despite undeniable visual evidence that Roybal possessed a weapon and shot it first. In fact, the amended complaint does not even mention that Roybal had a BB gun or weapon, nor does it describe the high-risk events leading up to the fatal shooting. *See Bell*, 37

4

F.4th at 366 ("[T]he gun's presence blatantly contradicts the complaint's omission.").[4]  Some factual disputes, such as whether Defendants knew Roybal dropped his gun or whether Roybal was fleeing towards a civilian-occupied car, may remain after considering the video evidence.  *See* Op. 12.  But we are not required to only accept and consider evidence that resolves *all* factual disputes—that is not a realistic or feasible standard.  Nor are we resolving factual disputes if we were to consider the video evidence, as concluded by the majority.  *Id.*  Those questions, if relevant, would remain for the jury.  So, in considering this appeal, we must "view[] the facts in the light depicted by the videotape" rather than rely "on such visible fiction" crafted in Plaintiff's amended complaint.  *Scott*, 550 U.S. at 380–81; *Iqbal*, 556 U.S. at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").

Separate and apart from the duplicitous factual allegations, Plaintiff also fails to satisfy his burden to survive Defendants' motion.  "When a § 1983 defendant

---

[4] The majority relies on a recent Sixth Circuit case that also involved consideration of bodycam and dashcam videos at the motion to dismiss stage in the qualified-immunity context.  *Chrestman ex rel. Wooden v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 24-6018, 2025 WL 2650582, at *1 (6th Cir. Sept. 16, 2025).  But that case is distinguishable.  In *Chrestman*, the complaint *acknowledged* that the plaintiff possessed weapons; the dispute was whether the video evidence blatantly contradicted or utterly discredited the complaint's allegations because it did not include more minute factual details that ensued immediately before the officers shot the plaintiff.  *Id.* ("[T]he complaint does not mention that [plaintiff] placed the bat and pickaxe on her shoulder shortly before she was tased.  But that omission does not contradict or discredit the complaint because [plaintiff] was backing away from the officers when she lifted the bat and pickaxe, and she had lowered the weapons from her shoulder when [the officer] tased her.").

raises the qualified immunity defense, the burden shifts to the plaintiff." *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020) (citation omitted). "To overcome qualified immunity, a plaintiff must show (1) facts that demonstrate the officials violated a federal constitutional or statutory right, which (2) was clearly established at the time of the defendant's conduct." *Id.* (citations omitted). Because a claim of excessive force is heavily factual and circumstantial to each particular case, "specificity is especially important in the Fourth Amendment context." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021). And unless it is "an obvious case," the plaintiff must "identify a case that put[s] [defendants] on notice that [their] specific conduct was unlawful." *Id.*

In his appellate brief (which spans less than four pages), Plaintiff haphazardly refers us to *Carr v. Castle*, 337 F.3d 1221 (10th Cir. 2003), and *Sevier v. City of Lawrence*, 60 F.3d 695 (10th Cir. 1995), but those cases are materially distinguishable and do not govern the facts here. In *Carr*, we held that it is unconstitutional to use deadly force to apprehend an unarmed fleeing suspect who poses no immediate threat to officers or to others. *Carr*, 337 F.3d at 1227. Simultaneously, however, we clarified that "if the suspect threatens [an] officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985)). That is relevant here, where Roybal did not heed the officers' orders, threatened the officers

6

with a weapon, and then attempted to flee, seemingly towards an occupied civilian car.[5]  And "[a]s for *Sevier*, that decision merely noted in dicta that deliberate or reckless preseizure conduct can render a later use of force excessive before dismissing the appeal for lack of jurisdiction.  To state the obvious, a decision where the court did not even have jurisdiction cannot clearly establish substantive constitutional law."  *City of Tahlequah v. Bond*, 595 U.S. 9, 13 (2021) (citing *Sevier*, 60 F.3d at 700–01).

In short, Plaintiff's attempts to define the clearly established law simply as "an officer cannot shoot an unarmed fleeing suspect" is too broad.  *See id.* at 12 ("We have repeatedly told courts not to define clearly established law at too high a level of generality."); *Rivas-Villegas*, 595 U.S. at 5 (The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition.").  And even if we were to assume at least one of the officers saw Roybal drop his gun or that Roybal was not running towards an occupied civilian car, there appears to be no case that clearly establishes Defendants violated substantive constitutional law in this set of circumstances.

All these noted deficiencies prevent Defendants from fair notice.  *Iqbal*, 556 U.S. at 685 ("Our rejection of the careful-case-management approach is especially important in suits where Government-official defendants are entitled to assert the

---

[5] During oral argument, counsel also referred us to *Tennessee v. Garner*, 471 U.S. 1 (1985).  The majority concludes that *Garner* clearly establishes a constitutional violation on the facts alleged.  But *Garner* is unpersuasive for the same reasons as *Carr*.

defense of qualified immunity."); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." (citations omitted)).

This appeal is riddled with problems.[6]  But in sum, we have the tools to address Defendants' qualified immunity at this stage based on the videos which are central to, and even contradict, Plaintiff's pleadings.  And because Plaintiff has not overcome Defendants' assertion of qualified immunity, I dissent.

---

[6] Cumulatively, these issues are enough to consider sanctions for Plaintiff's misconduct.